CHARLES WITT *vs.* ST. PAUL & NORTHERN PACIFIC RAILWAY COMPANY.

January 10, 1888.

**Eminent Domain — Condemnation by Railway Company of Village Lot—Interest in Street.**—Where, in condemnation proceedings by a railway company, a village lot is appropriated under the description thereof as designated by a survey and plat of the same, the company takes presumptively to the centre of the street. And, subject to the public easement and control of the proper public authorities, the company acquires the same interest in that portion of the lot so taken lying in the street as to the remainder thereof, and may apply it to the same uses.

**Possession as Evidence of Title.**—Actual possession is sufficient evidence of title to enable the party in possession of land to maintain trespass against a stranger.

**Deed—Construction—Intention of Parties.**—It is a cardinal rule of construction, to ascertain and give effect, if practicable, to the intention of the parties as gathered from the language of a deed, the situation of the parties, and the subject-matter. All parts of the instrument are to be considered together, and the construction is to be upon the whole, if the different parts can stand together. The words of a deed are to be taken as the grantor's, and any ambiguity or uncertainty is to be resolved in favor of the grantee; but technical rules of construction are not to be so applied as to defeat the manifest intention of the parties.

**Same—Description—Exception.**—Where the grant is in general terms, a particular exception is good; and so also a general description of land conveyed by deed may be limited and restrained by a particular description.

Same.—Where a grantor and his wife, who had been in possession without color of title of certain village lots, (in connection with others in the same block held under a tax title which appeared of record,) under circumstances tending to show adverse possession thereof, the lots being situated in, and a part of, block 10, (according to the plat of a certain addition,) executed a deed to a purchaser containing the following description, viz.: "All of blocks 10 and 11," (in the same addition,) "intending to convey *only* those lots in said blocks 10 and 11 which have been quitclaimed to the parties of the first part, or either of them, by conveyance of tax titles," *held*, that there passed by the deed only such lots as were acquired under the conveyance of tax titles.

Adverse Possession — Continuous Holding—Successive Occupants.— To make a case of adverse possession which will be recognized as equivalent to title, it must have been continued for the statutory time under the original hostile entry; and each succeeding occupant must show title under his predecessor, and his possession be referable to such entry.

Plaintiff brought this action in the district court for Hennepin county, to recover damages for the alleged trespass of the defendant. In his complaint, the plaintiff alleges that he was the owner of lots 8 to 14 inclusive, in block 10 of Demmon's addition to North Minneapolis, at the time of the alleged trespass, and that the defendant wrongfully entered upon the premises, erected and constructed high embankments with a railway track over the same, has maintained and operated its railway thereon without any compensation made to plaintiff, and has dug up and carried away large quantities of earth and gravel. The answer alleges that the defendant acquired by condemnation proceedings the front 55 feet of lots 8 and 9, lot 13, and that part of the street lying in front of lot 14, and that defendant is the owner of lots 10, 11, and 12; denies that the plaintiff ever was the owner of lots 10, 11, and 12, or any part thereof, and admits that the defendant has constructed and has operated its railway over the land condemned and of which the defendant is the owner. The reply raises no issue as to the condemnation proceedings. The action was tried before *Rea*, J., and a jury, and the plaintiff had a verdict of $100 for damages to lots 8 and 9, $300 for damages to lot 13, $100 for damages to lot 14, and $500 for damages to lots 10, 11 and 12. The defendant appeals from the judgment entered upon the verdict.

Upon the trial it appeared that the defendant had occupied with its embankment from 3 to 10 feet of the front of lot 14.

*D. A. Secombe*, for appellant.

*A. B. Jackson*, for respondent.

VANDERBURGH, J.   The plaintiff seeks to recover damages against the defendant, for certain acts of trespass to several village lots alleged to belong to him, and specifically described as lots 8, 9, 10, 11, 12, 13, and 14, in block 10, in Demmon's addition to North Minneapolis, according to the recorded plat of the same.   The pleadings, however, admit that the defendant has duly taken and appropriated for its railroad, by virtue of condemnation proceedings, under Gen. St. 1878, c. 34, title 1, lot 13, the front 55 feet of lots 8 and 9, and also that part of the street lying in front of and adjoining lot 14, above described, and that it has built its railroad upon the front 55 feet of lots 8 and 9, over and upon the front portions of lots 10 and 11, and in the street in front of lots 12 and 13, and in the street over the strip condemned in front of lot 14.

1. As respects lots 8, 9, and 13, the trespasses complained of consisted in excavations or embankments caused to be made by the company in that half of the street in front of and next adjoining the lots. By the descriptions under which the lots were condemned and appropriated, the company took presumptively to the centre of the street; and, subject to the rights of the public, the defendant may enter upon and may use that portion of the street so acquired for its improvements, just as it may use and occupy any other portions of the lots in question.   Under a description of village lots *eo nomine*, as platted, the land in the street passes as parcel of the lots, and not as appurtenant.   *In re Robbins*, 34 Minn. 99, (24 N. W. Rep. 356.)   And under that description, the title, right, or interest acquired, whatever it be, in the street is presumed to be included in the estimation of the value or damages in the condemnation proceedings, and such estimation is usually deemed to be the value of the lots as described, whether in such proceedings under railway charters the company acquires the fee, or the land for its corporate purposes only.   *Robbins* v. *St. Paul, S. & T. F. R. Co.*, 22 Minn. 286.   No damages were recoverable by plaintiff for the alleged trespasses to these lots.

2. The defendant has acquired no part of lot 14, save that portion which lies in the street, and plaintiff alleges ownership and possession of the balance of the lot. The evidence tends to show that he was, at the time of the alleged trespass, in the possession thereof, and justifies an allowance of damages in his favor. It is not material to inquire whether he produced any other evidence of title in himself, since possession was *prima facie* sufficient against a mere trespasser. *Sherin* v. *Brackett,* 36 Minn. 152, (30 N. W. Rep. 551.)

3. As to the lots 10, 11, and 12, the defendant established on the trial, by indisputable evidence, its ownership of the paper title regularly derived from the patentee of the United States, and is the actual owner thereof in fee, and entitled to the possession of the same, unless its grantors were disseized and barred by an actual adverse possession which has inured to the benefit of plaintiff, and ripened into a right of possession equivalent to title.

The plaintiff, to support his title, offered evidence tending to show that one Peter Poncin, who had no color of title to these lots, in or before the year 1864, entered and occupied block 10, in which they are included, in connection with the adjoining blocks 9 and 11, which were all inclosed together, including the streets. The evidence also tended to prove that Poncin had and claimed title to block 9, except one lot, and upon this block he resided and erected substantial improvements; and blocks 10 and 11, which were inclosed in part by line fences of the neighbors, connected by a fence built and maintained by him, together with the intervening streets, were used by him, in connection with block 9, chiefly for pasturage and tillage. His occupancy continued down to the year 1871, when he made a sale and conveyance to one Fluhrer, who immediately entered into possession, lived upon block 9, and used and occupied the other blocks as Poncin had done. After several years, Fluhrer died; but his widow continued in possession until she sold to the grantor of plaintiff in the year 1879, who immediately succeeded to her possession, and has since retained the same. No deeds or record evidence of these sales and transfers were introduced by plaintiff, though admitted to be in writing; but the plaintiff claims that it sufficiently appears from the evidence in his behalf that the entry of Poncin was hostile, and the

possession adverse, to the present time, and that the possession of the several successive occupants was connected and continuous.

Whether, upon a careful examination and analysis, the plaintiff's evidence would be found to sustain this contention, we deem it unnecessary to decide, for the reason that we are of the opinion that the record evidence of the transfers referred to, introduced by the defendant, make it manifest that, as respects the three lots in question, there was no privity between the several successive occupants, and that the plaintiff has not yet acquired title thereto by adverse possession.

It appears that in 1863 a tax deed of the seven lots described in the complaint, and certain lots in block 11, was issued by the auditor of the county to a tax purchaser. In 1874 the owner of the title to lots 10, 11, and 12 in controversy bought in and acquired the interest of such tax purchaser, and in 1867 the owner of the tax title conveyed his interest in block 10, except the three lots last above mentioned, to Catherine Poncin, wife of Peter Poncin, and thereafter, in October of the same year, a lease was executed and placed on record by Catherine Poncin and husband to one Kecgelsperger, of all the lots in block 9, except lot 7, and in addition 15 lots in blocks 10 and 11, but excepted therefrom lots 10, 11, and 12 aforesaid, and such lease expressly recited that the title to the 15 lots referred to was a tax title. The conveyance of the Poncins to Fluhrer was a quitclaim deed, dated May 15, 1871, and recorded May 18, 1871. The description therein was as follows: "All of block 9, and also all of blocks 10 and 11, Demmon's addition to North Minneapolis, intending to convey *only* those lots in said blocks 10 and 11 which have been quitclaimed to said parties of the first part, or either of them, by conveyance of tax titles. In the said block 9, there is *excepted* lot 7, as not belonging to the said parties of the first part." On the first day of May, 1879, the deed under which plaintiff claims was executed, and afterwards duly recorded, and contained a description of the same 15 lots in blocks 10 and 11 above mentioned as being acquired under the tax sale, but did not include lots 10, 11, and 12, block 10, in question here.

We are now to consider the exception of the defendant to the refusal of the court to instruct the jury that, upon the evidence in the

case, they could not find a verdict for any damages in relation to these particular lots.     Admitting that the evidence of plaintiff tended to prove adverse possession by the Poncins of the three blocks while they were in the occupation thereof, the defendant claims that Fluhrer's possession under them must be deemed to be limited to the land described in the deed of Poncin to him, which, as it contends, does not include these lots.     The plaintiff, however, insists that the granting clause in that deed covers the whole of the three blocks 9, 10, and 11, and is not affected by the limitations or exceptions therein following the designation of the blocks.     But this construction of the description in that deed is, we think, too narrow.     Technical rules of interpretation are not favored, and are not to be so applied as to defeat the intention of the parties.     The books say, in general terms, "the first deed and the last will shall prevail."     "If two clauses or parts of a deed are repugnant one to the other, the first shall be received, and the last rejected."     These are general rules, the principles of which are applicable in proper cases, but are not to be invoked unless, upon a fair construction of their meaning, such clauses are found irreconcilable; and, of course, have no application where the language and interpretation are not doubtful.     But the words of the deed are to be taken as the grantor's, and any ambiguity or uncertainty is to be resolved in favor of the grantee.     *Pike* v. *Monroe*, 36 Me. 309, 315, (58 Am. Dec. 751;)     *Cutler* v. *Tufts*, 3 Pick. 272;     *Waterman* v. *Andrews*, 14 R. I. 589, 595.

The cardinal rule of construction is to ascertain and give effect to the intention of the parties to the deed; and to this end the court must consider all parts of the instrument, and the construction must be upon the entire deed, and not upon disjointed parts of it.     And if the language is ambiguous, and it is necessary in order to ascertain the intent of the parties, evidence of the circumstances, including the situation of the parties and of the property, and the state of the title, may be received.     *French* v. *Carhart*, 1 N. Y. 96, 102;     *Norris* v. *Beyea*, 13 N. Y. 273, 283;     *Jackson* v. *Myers*, 3 John. 388, 395, (3 Am. Dec. 504;)     *Coleman* v. *Beach*, 97 N. Y. 545, 553;     *Austrian* v. *Davidson*, 21 Minn. 117.     It is competent for the grantor to convey such interest in or portion of his lands as he chooses, and to adopt any

suitable language to evidence such intention; and too much stress is not to be laid on the grammatical construction or forms of expression used, if his intention is evident from the instrument, and there is no principle which prevents giving effect to the intention thereby clearly indicated. *Bates* v. *Foster*, 59 Me. 157. An exception is good where the granting part of the deed is in general terms. 4 Kent, Comm. *468. "It is void when the exception is as large as the grant, or the excepted part be specifically granted." Id. Thus a block is a general description as respects the lots therein, and an exception of lots in a grant thereof is good. But the exception of one of several lots specifically granted would be void for repugnancy. So, also, the rule is well settled that a general description of land conveyed by deed may be limited and restrained by a particular description. *Woodman* v. *Lane*, 7 N. H. 241; *Sprague* v. *Snow*, 4 Pick. 54, 56; *Austrian* v. *Davidson*, 21 Minn. 117.

In *Bates* v. *Foster, supra*, the description of certain lands granted was followed by these words: "Meaning hereby to convey to the said Bates the same premises and title as conveyed to me by David Witham, and no more." The case closely resembles this. It was held that the interest acquired by the grantor from Witham alone passed. Says the court: "The defendant in his deed says he intended to convey the same he received from Witham, and no more; but it is said that these words are repugnant to what goes before, and are therefore void. Such a construction is not admissible, unless they are necessarily so inconsistent that both cannot stand together. Whatever may have formerly been the rules of construction in this respect, in modern times they have given away to the more sensible rule, which is, in all cases, to give effect to the intention of the parties, if practicable, when no principle of law is thereby violated." Metcalf, Contracts, 290; *Miller* v. *Hannibal & St. Joseph R. Co.*, 90 N. Y. 430. Substantially similar clauses received a similar interpretation in *Flagg* v. *Bean*, 25 N. H. 49; *Ousby* v. *Jones*, 73 N. Y. 621; and *Bent* v. *Rogers*, 137 Mass. 192.

In the deed before us, the exception of lot 7, in block 9, is clearly good; and as to blocks 10 and 11, the intention to include only the lots which the grantor had acquired from the tax purchaser, and to

except the others, is equally clear. No person of ordinary understanding could, upon inspection of the deed, fail to discover such intention. And the deeds, which were all recorded, showed just what lots he had acquired title to, and the nature of his title.

Fluhrer went into possession under this deed, which is the evidence of what he purchased, and Poncin abandoned the possession. The transaction indicates that the latter did not claim these lots as owner, and that he considered his occupancy thereof, sandwiched as they were between the lots which he held under the tax deed, and included in one general inclosure, as merely precarious. The possession of Fluhrer must be referred to the deed, and, as to these lots, there was no privity between him and Poncin. He merely succeeded to the possession of the latter, but there was no unity of possession under an original hostile entry by Poncin. As held in *Sherin* v. *Brackett,* 36 Minn. 152, (30 N. W. Rep. 551,) to establish adverse possession it need not be continued in the same person; but, when held by different persons, it must be shown that privity existed between them. Each succeeding occupant must show title under his predecessor in order to link his possession with that of the latter under the original entry. Ang. Lim. § 413; *Christy* v. *Alford,* 17 How. 601; *San Francisco* v. *Fulde,* 37 Cal. 349. Thus, as between testator and devisee, or ancestor and heir, the disseizin commenced by the former is continued in the latter in accordance with his title, and is referred to the original entry. It is plainly distinguishable from a case of successive entries and new disseizins. *Haynes* v. *Boardman,* 119 Mass. 414. The possession of the heir or purchaser is regarded a continuance of that of the ancestor or grantor on account of his privity of title to the land. *Leonard* v. *Leonard,* 7 Allen, 277, 282. If there is no privity, a new and distinct disseizin is made by each disseizor. *Sawyer* v. *Kendall,* 10 Cush. 241. And in *Ward* v. *Bartholomew,* 6 Pick. 409, it was distinctly held that, where a disseizor conveys part of the land, and the grantee under color of the deed enters upon the whole, the possession of the first disseizor will not avail the grantee in regard to the part not embraced in the deed. No connected or continuous adverse possession is shown in this case between Poncin and Fluhrer, or between Fluhrer and the plaintiff, and Poncin's deed ex-

v.38m—9

pressly excludes these lots from the sale and conveyance made by him; and upon the record as presented the plaintiff has not acquired title thereto, and the instruction should have been given as requested.

Judgment reversed, and cause remanded.