FREDERICK GRUEBER and Wife *vs.* JOHN HENRY LINDENMEIER and others.

November 29, 1889.

Conveyance—Life-Estate.—A certain deed construed, and *held* to give the grantees a life-estate in the land.

Order reversed as to one defendant, and affirmed as to the others.

Appeal by defendants from an order of the district court for Scott county, *Edson*, J., presiding, refusing a new trial. "Exhibit E" mentioned in the opinion is as follows:

"This indenture, made the 28th day of January, in the year of our Lord one thousand eight hundred and eighty, between John H. Lindenmeier, Jr., and Dorothea Magdalena Grueber, of the town of Hancock, county of Carver, and state of Minnesota, parties of the first part, and Frederick Grueber and Cathrina Margeret Grueber, of same place, parties of the second part, witnesseth: That the said parties of the second part are to have the free use and privilege—that is to say, being boss—of a certain real estate lying and being in the county of Carver and state of Minnesota, deeded and executed on the 28th day of January, A. D. 1880, by the parties of the second part to the said parties of the first part, during their natural lives; and also the parties of the first part further bind themselves to stay and work the said real estate with the parties of the second part; and it is further agreed upon that if either of the parties of the first part should die, and leave a child or children, that child or children must have the said real estate after the death of both parents. In testimony whereof, the said parties of the first part have hereunto set their hands and seals the day and year above written." (Duly executed, attested, and acknowledged.)

*Odell & Steidl*, for appellants.

*Chas. G. Hinds*, for respondents.

MITCHELL, J. This was an action to recover damages for the wrongful conversion of a quantity of grain. Of course, the ownership of a crop may be in one person, and the ownership of the land on

which it was raised in another; but as in this case, under the evidence, the right to the grain depends upon and must follow the right to the land, the whole case turns upon the construction to be given to the instrument, Exhibit E, in connection with the deed, Exhibit C. In January, 1880, the plaintiff Frederick was the owner of a farm of some 140 acres, upon which he and his wife and co-plaintiff, Cathrina, resided. They had an only child, the defendant, Dorothea, who was betrothed to the defendant John Henry, to whom she was married two weeks afterwards. The plaintiffs executed to these two defendants, their daughter and prospective son-in-law, a conveyance (Exhibit C) of the farm, which was a warranty deed in the usual form, and with full covenants of title. This deed was not wholly a voluntary conveyance, inasmuch as, in consideration of it, the plaintiff Frederick was released from a debt which he owed to the father of the defendant John Henry, and also from a small claim in favor of John Henry himself, for work. But these were evidently not in amount anything like the full value of the farm, or the only consideration for the conveyance, which was undoubtedly intended as a provision for the young people, in view of their contemplated marriage. At the same time, and as a part of the same transaction, the daughter and contemplated son-in-law executed back to the old people the instrument, Exhibit E, which was witnessed and acknowledged as required in cases of conveyances of real estate. The contention of plaintiffs is that this instrument gives them a life-estate in the farm; while, on the other hand, the contention of the defendants is that, because of its indefiniteness and uncertainty, as well as its repugnancy to the deed, Exhibit C, it is absolutely void; and in any event, even if full force and effect be given to it according to its language, it conveys no interest in the land, but merely means that the plaintiffs should have a sort of paternal supervision over the management of the farm. The instrument is certainly a very unique one. It and the deed, (Exhibit C,) being parts of the same transaction, must be considered and construed together, and effect given to both, if possible. Technical rules of construction are not favored, and are not to be so applied as to defeat the intention of the parties; for, as was said in *Witt* v. *St. Paul & N. P. Ry. Co.*, 38 Minn. 122, (35 N. W. Rep.

862,) such rules of construction, in modern times, have given way to the more sensible rule, which is, in all cases, to give effect to the intention of the parties, if practicable, when no principle of law is thereby violated. Too much stress is not to be laid on the grammatical construction or forms of expression used. The cardinal rule of construction is to ascertain and give effect to the intention of the parties to the instrument; and, to this end, the court must consider all parts of it, and the construction must be upon the entire deed, and not upon disjointed parts. And, if the language is ambiguous, resort may be had to evidence of the surrounding circumstances, and the situation of the parties, if necessary, in order to throw light upon their intention.

Applying these rules to the present case, we are of opinion that the manifest intention of the parties was that, while it was expected that the son-in-law and daughter would make their home on the farm, and assist in working it, yet the old people should have the control and beneficial use of it during their natural lives,—in other words, a life-estate in it; liable, however, to be terminated on the happening of the contingency mentioned in the last clause of the instrument. This is what we think is meant by the expression, "the free use and privilege," etc. It is claimed that this is explained and defined by what follows, viz., "that is to say, being boss;" and that this means merely the privilege of exercising a sort of fatherly supervision over the management of the farm, without having any pecuniary interest in it. This would be a very barren privilege, in the absence of any provision for compensation for this supervision. We do not think this is what the parties meant. The evident purpose was that the parents should have or retain some interest in the farm as a provision for their support during their natural lives; and, if the instrument does not give them a life-estate, they have nothing,—not even a right to make their home on the land, or any covenant on the part of the son-in-law and daughter to contribute to their support. If any significance at all is to be given to the word "boss," we think the parties used it according to its original meaning, viz., "master," in the sense of owner or proprietor.

Other provisions in the deed clearly indicate an intention or un-

derstanding that the plaintiffs were to have some legal rights in the land; for example, that by which the defendants bind themselves to stay and work the land with the plaintiffs; also that which provides that if both the defendants should die, leaving surviving them issue of their contemplated marriage, the children should have the land,— both of which are wholly inconsistent with the idea of the absolute present ownership and use of the farm by defendants. The mere fact that the instrument contains no express words of grant is not controlling, provided other parts of it indicate such an intention. The land which is the subject of the contract is sufficiently identified by reference to the other deed. Our conclusion, therefore, is that the plaintiffs have a life-estate in the farm, and hence were the owners of, and entitled to the possession of, the grain in controversy. There is not, however, a *scintilla* of evidence connecting the defendant Dorothea with the wrongful conversion, and therefore the order denying a new trial must, as to her, be reversed. See *Nelson* v. *Munch*, 28 Minn. 314, (9 N. W. Rep. 863.)

Order reversed as to defendant Dorothea, and affirmed as to the other two defendants.