# WILLIAM J. LONGCOR v. CITY OF RED WING AND OTHERS.[1]

January 12, 1940.

No. 32,262.

*W. C. Christianson,* for appellants City of Red Wing and The T. B. Sheldon Memorial Auditorium Board.

*Albert Mohn,* for appellants Ben Gerlach, R. S. Curran, and C. C. Bracher.

*Theodore N. Ofstedahl,* for appellants John Dengler and W. E. Koehler.

*Plato E. Sargent,* for appellant A. F. Hernlem.

*Todd, Stone & deLambert,* for respondent.

HILTON, JUSTICE.

The several defendants have appealed from orders of the lower court overruling demurrers to the complaint. The lower court certified the questions involved as important and doubtful.

The background of the litigation is this. Theodore B. Sheldon, a resident of Goodhue county, died testate in 1900. By his will,

[1]Reported in 289 N. W. 570.

after certain devises and bequests had been made, he provided the residue was to be given his executors in trust. It was directed that within 15 years after Sheldon's death the principal and income were to be used for the creation, establishment, and maintenance of "any such charitable or other public institution or for any such public use as said Trustees may in their discretion see fit to appropriate or apply the same." There was a further restriction, however, providing that the money was to be used and "appropriated for some public and beneficent but non-sectarian purpose in the said city of Red Wing." Authority was given the trustees to "grant, bargain, sell and convey by deed or otherwise any and all real and personal property belonging to said trust estate." Then followed a provision authorizing the trustees in "using and appropriating" the trust estate to impose such limitations and conditions as seemed desirable and expedient.

The trustees decided to erect an auditorium building at Red Wing. When it was completed arrangements were made to convey the premises to the city. By L. 1903, c. 22, § 1, the city had authority to take title to the property for the use and benefit of the residents "in such manner, and upon such terms and conditions, and with such restrictions * * * as may be stated or provided in the instruments or instrument by which such property is so conveyed or transferred to such city." By deed, the trustees conveyed title to the city and "its successors and assigns" in fee simple "To Have and To Hold the Same absolutely and forever, but expressly upon the conditions and for the purposes and in the manner herein specified." Here followed many detailed provisions. By one the building was to be known thereafter as the T. B. Sheldon Memorial Auditorium. Another created a managing board of five resident voters, who "shall for and in behalf of said City have the general charge of the said property." The board had the authority and power to permit the building to be used for "musical and theatrical entertainments, public meetings, lectures and such other purposes as in their judgment may contribute to the education, enjoyment, improvement or amusement of the people of Red Wing." All of the revenue from the audito-

rium was to be credited to a special fund to be known as the "Auditorium Fund." This was to be kept distinct from other city funds and was not to be transferred to any other or used for purposes other than the maintenance and conduct of the auditorium. Any surplus was to be invested and the income credited to the fund. Finally, there was a provision which was made a condition of the conveyance running with the land. This was to the effect that the acceptance by the city council of the conveyance shall "operate as a contract on the part of said city to and with the above mentioned T. B. Sheldon Auditorium Board * * * for the keeping and performance by said city of each and all of the provisions, conditions, and limitations in this instrument contained."

The auditorium became the source of considerable income with the advent of motion pictures. The "Fund" amounted at one time to $100,000. From the complaint, it appears that some of this was used for purposes other than the maintenance of the auditorium. Plaintiff seeks to have this restored. In the complaint he alleges that he is a citizen, resident, and taxpayer of Red Wing and an ultimate beneficiary under the will and the charity. He sues in his own behalf and in behalf of all the beneficiaries of "said will and the charity created thereby." He alleges that the city and the members of the board (who are defendants) have entered into a conspiracy to divert the money in the fund for purposes foreign and contrary to the provisions previously recited here. He charges that $54,000 at least has been taken from the fund and used to pay for other municipal activities. All defendants except Hernlem interposed demurrers on the ground that plaintiff was not the proper party to maintain this action. All demurrers were overruled.

Defendants argue that plaintiff cannot sue whether the instruments created a charitable trust or a gift on condition. Plaintiff contends that a gift on condition was made and that he is therefore a proper party to pursue defendants. While it is perhaps possible to dispose of this controversy without making a disposition of the question whether a trust or gift on condition was made,

we think it is better to resolve this so that the litigants can know the exact basis of the decision and appreciate the status of all the parties involved. Consequently the first step is to determine whether a gift or a charitable trust was created and then to decide if plaintiff can maintain the action.

To dispel any notion that a charitable trust was created, it is necessary to consider the history of such trusts in this state.

The common law recognized and upheld charitable trusts. Our legislature abolished all trusts except those authorized by statute. (The present section is 2 Mason Minn. St. 1927, § 8081.) Until the provisions of 2 Mason Minn. St. 1927, § 8090-1, *et seq.* were enacted expressly authorizing charitable trusts, the consistent holding of this court was that such a trust could not be created either as to real, Little v. Willford, 31 Minn. 173, 17 N. W. 282, or personal property, In re Estate of Ford, 144 Minn. 454, 175 N. W. 913; Shanahan v. Kelly, 88 Minn. 202, 92 N. W. 948. Although such trusts are now authorized, L. 1927, c. 180, 2 Mason Minn. St. 1927, § 8090-1, *et seq.* the enactment expressly provides that [§ 8090-4]:

"Nothing in this act shall apply to any gift, bequest, devise, or trust, made, created, or arising by or under the provisions of the will of any person whose decease occurred before this act takes effect."

Prior to the enactment of this statute (an earlier attempt was declared unconstitutional for defect in title, Watkins v. Bigelow, 93 Minn. 210, 100 N. W. 1104) in numerous cases we construed gifts to charities as absolute or on condition rather than in trust. See Dwan, "Minnesota's Statute of Charitable Trusts," 14 Minn. L. Rev. 587; and In re Estate of Lundquist, 193 Minn. 474, 259 N. W. 9, for a partial list of the cases. Of course a gift is valid although made for a charitable purpose, either as an absolute gift or one on condition. As long as the donor or testator properly manifests his intention, there is no barrier to finding such a gift. No one is limited to the creation of charitable trusts in making a gift for a charitable purpose. See Dwan, 14 Minn. L. Rev. 587,

589; 2 Bogert, Trusts and Trustees, § 324. This necessarily follows as the logical implication of our decisions set out in In re Estate of Lundquist, *supra*.

From the foregoing, it should be clear that at the time of the drafting of the will and of the death of the testator, as well as when the deed was executed by the trustees in 1904, a charitable trust could not be created in this state. The quoted provisions of L. 1903, c. 22, did not validate a charitable trust even with the city as trustee. It went no further than to authorize the city to take title on such terms and conditions as were imposed by the instrument conveying the property. This, of course, presupposed the validity of the conditions and limitations. While the grant is broad enough to permit the city to be trustee of a charitable trust, if such were valid, or to take title to a gift with conditions attached, still it seems clear that the statute did not operate to give validity to charitable trusts. As for the 1927 statute, it is express in the command that it shall not operate retrospectively but only prospectively. Since neither the 1903 nor the 1927 statutes contribute to the solution, they can be dismissed at this point. But this much is true, unless it clearly appears that it was the intention of the testator and the trustees to create a charitable trust and nothing else we must presume that they intended to accomplish what the law allowed them at the time the instruments were executed.

The gift cannot be held to be a charitable trust since at the time the rights vested, *i. e.*, at the time of the delivery of the deed, 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 2662; Underleak v. Scott, 117 Minn. 136, 134 N. W. 731, a valid charitable trust was an impossibility. But we think that if the instruments are looked at as of the time executed, they are open to a fair and reasonable interpretation that a gift on condition was intended and was made. This conclusion follows without distortion of the will or deed but rather by simply giving operative effect to the limitations, construed in light of the fact that a charitable trust was invalid at the time here relevant.

There can be no dispute that the will created a trust to carry out the preliminary arrangements. Initially we can dispose of the theory that the will and deed of the trustees (their intention is important because of the broad grant of power given them by the will) show that a charitable trust and nothing else was intended. As will appear more clearly, this is not so. On the contrary, all the items of relevancy amply support the proposition that a gift was intended. The trustees were given authority to bargain and sell the trust property. This indicated that Sheldon contemplated a conveyance. Under the grant of power to convey, previously quoted, the trustees could have attempted to perfect a charitable trust or could have made a gift impressed with certain specified conditions. The law did not permit the former; it did the latter. Extensive discretionary powers were granted authorizing the trustees in using and appropriating the property of the trust estate to impose such conditions and limitations as seemed desirable and expedient. Certainly it was within the scope of their power to deem that a gift on condition was expedient. The power was present. Turning to the deed, the instrument discloses that the trustees exercised the power to impose restrictions and limitations. The property is conveyed in fee simple on the "conditions and for the purposes and in the manner herein specified." Ordinarily if a trust is intended, words of trust are used as, for instance, was done in Sheldon's will. "On condition" is usually but not necessarily associated with legal rather than equitable limitations. The phrase itself is equivocal for it might also be construed as a term creating a trust. See Restatement, Trusts, comments d and e to § 351, p. 1100-1101; Dwan, 14 Minn. L. Rev. 591, note 18. But to state the self-evident, the phrase is not inconsistent with a conditional gift. It lends support to the theory that this was intended to be achieved when it is considered a trust would have been invalid and presumably the parties dealing in such an important matter were aware of this fact. So it can be said that the limitation in the deed is favorable to the construction contended for by plaintiff.

The mere fact that the testator and the trustees provided that the property should be used only for public purposes does not render the gift a trust to the exclusion of a gift on condition. The juridical devices available permit either method to be used to accomplish, in substance, the same objective. So the public character of the gift is consistent with either interpretation. In comment "d" to § 351 of the Restatement, it is stated:

"A charitable trust is created if the transferee was restricted in the use of the property to charitable purposes." *Cf.* Introductory Note, p. 1093.

But this section is not concerned with the question whether there was a charitable trust or a conditional gift, but rather the question under discussion is whether the transferee holds the property in trust or absolutely. We do not think the statement is in point here. If it is not to be considered to be limited by its context, it is much too broad as a general proposition. Assuming a charitable trust to be legal, the fact that the transferee is restricted to a charitable purpose might often be a strong factor in inducing the conclusion that a charitable trust was intended. But the limitations on the power of disposition by trust imposed by our legislature is a factor to consider in construing instruments executed at the first part of the present century. It cannot be said that a condition that the property should be used for specified charitable purposes is beyond the pale of valid conditions which can be imposed upon gifts. We think that the statement of the American Law Institute cannot be taken as conclusive in the situation here.

The provision that the income was to be used for the benefit of the auditorium only is clearly a valid condition. On a gift for a public purpose where it is contemplated that the benefit is to inure to several generations, a restriction of this character is often vital to the successful accomplishment of the objective sought. Such a provision can be harmonized with the construction that a gift was contemplated on the named condition rather than a charitable trust which would be invalid.

In view of the foregoing, we have no difficulty concluding that the language of the relevant instruments effectively created a gift on condition. In so doing we do not think that an invalid trust is being distorted into a gift on condition as some commentators have accused earlier decisions of doing. 14 Minn. L. Rev. 587, 591. There is nothing in the will or deed which runs counter to the construction here adopted. With this result reached, consideration must now be given to the question whether plaintiff is the proper litigant to assail the alleged violations.

Plaintiff alleges he sues in this own behalf and on behalf of all the beneficiaries of the "will and the charity." In additional allegations it is set forth that he is a citizen, resident, and taxpayer. From the complaint it at once appears that his interest is not any greater than any other taxpayer and citizen of Red Wing. For a variety of reasons, the contention of defendants that plaintiff has not legal capacity (in the sense of the right to maintain a direct action) to sue must be sustained. The governing principles which lead to such a conclusion are easily discoverable in the nearly identical field of charitable trusts. Fundamentally and in substance, there is very little practical difference insofar as the beneficiaries are concerned between a gift on condition and a gift by way of charitable trust. Both accomplish the same objectives. Certainly there is little reason to make a distinction between the two in respect to the question of the proper party to enforce compliance with the terms of the conveying instrument. Logically the same general principles should prevail as to both. It is the nearly uniform rule that a charitable trust can only be enforced by the attorney general. This rule has been evolved by the courts or by enactment of the legislature. For a full discussion, see 2 Bogert, Trusts and Trustees, § 411. In this state by 2 Mason Minn. St. 1927, § 8090-3, it is provided:

"The attorney general shall represent the beneficiaries in all cases arising under this act, and it shall be his duty to enforce such trusts by proper proceedings in the courts."

While this provision, of course, is not applicable here, it does serve to demonstrate that the policy of our legislature is to limit the assertion of violations of the terms of charitable trusts to a responsible officer. It seems reasonable that this same policy should run throughout this realm of the law so that as to gifts on condition for public purposes the same rule should apply.

The Restatement, Trusts, § 391, takes the position that the attorney general should maintain the suit to enforce a charitable trust, and it cannot be enforced by a person who has "no special interest" in it. In comment "d" it is stated:

"The mere fact that as members of the public they benefit from the enforcement of the trust is not a sufficient ground to entitle them to sue, since a suit on their behalf can be maintained by the Attorney General."

The rationale of restricting enforcement to the attorney general in the ordinary case is well stated in 2 Bogert, Trusts and Trustees, § 411, p. 1255, wherein it is said:

"The purpose of vesting in some public official like the Attorney General the exclusive power to begin proceedings to enforce charitable trusts is obvious. The beneficiaries of such trusts are usually some or all of the members of a large shifting class of the public. If any member of this class who deemed himself qualified might begin suit, the trustee would frequently be subjected to unreasonable and vexatious litigation."

The attorney general is a responsible state officer who will act in the public interest rather than for personal motives. To limit the right to sue to this officer will avoid irresponsible parties (we do not question or pass upon plaintiff's responsibility) instituting actions without adequate investigation or hope for success. Every consideration which favors limiting the power to maintain suit to the attorney general in the ordinary case involving a charitable trust likewise operates in the ordinary case of a gift on condition. Therefore the same general rule should be applicable. To hold otherwise would create an arbitrary and artificial difference be-

tween the two situations. The mere fact that at the time the will and deed were made the attorney general could not enforce a charitable trust since they were invalid does not prevent us holding that he is the one to enforce the terms of a gift on condition although made in 1904. In this respect plaintiff's argument falters.

Perry Public Library Assn. v. Lobsitz, 35 Okl. 576, 130 P. 919, 45 L.R.A. (N.S.) 368, relied upon by plaintiff, is somewhat similar to the instant case. However, the court regarded the gift as creating a charitable trust and by way of dictum stated that a taxpayer or beneficiary of the trust could maintain suit. It does not appear that any objection to party plaintiff was made. For a discussion of the case see 2 Bogert, Trusts and Trustees, § 414, p. 1262. Actually the case can be regarded as representative of the minority view. Anderson v. Thomas, 166 La. 512, 117 So. 573, needs only to be read to illustrate that it does not throw light upon the problem here involved. With the other cases relied upon by plaintiff, such as Regan v. Babcock, 188 Minn. 192, 247 N. W. 12, we do not regard the present opinion as in any way conflicting. Determination whether a particular person has a sufficient interest to justify suit at his instance depends to a large degree upon the facts and circumstances involved. For instance, compare Evens v. Anderson, 132 Minn. 59, 155 N. W. 1040, and the Regan case, *supra*. Naturally, in resolving plaintiff's contention adversely, we are doing so in view of the facts here involved. We do not regard the interest of plaintiff as adequate to justify suit by him since his interest as well as that of the other members of the community can be protected by the attorney general.

Plaintiff contends that 2 Mason Minn. St. 1927, § 9165, which authorizes representative suits in certain instances, permits plaintiff to sue here. Reflection upon the previous discussion will demonstrate that this statute cannot aid plaintiff. The statute deals with procedure. As a condition precedent, the litigant must be able to sue. It cannot operate here because plaintiff has not the right to sue, that right being vested in the attorney general.

The scope of the attorney general's power to act or refuse to act is not before us. One of the latest cases on the subject is State ex rel. Town of Stuntz v. City of Chisholm, 196 Minn. 285, 264 N. W. 798, 266 N. W. 689. Nor is there a need to determine the grounds upon which the attorney general can sue. Several circumstances are here present which are often absent in gifts on condition. The fact that the gift was made by the decedent for a public benefit is adequate reason to justify permitting a responsible officer insuring the continuance of that benefit to the community when it is jeopardized by conduct of certain individuals. This is the rationale of the decision. We are not unmindful of the ordinary property rule dealing with conditions. See also 3 Scott, Trusts, § 401.2. If in the instant case the attorney general had, upon adequate showing, refused to act, another result might obtain. But that is not before us.

In view of the conclusions reached, we need not discuss Hernlem's demurrer.

The orders appealed from are reversed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.