CITY OF DETROIT *v.* WAYNE CIRCUIT JUDGES.

1. PROHIBITION—QUESTIONS REVIEWABLE—TAXATION.

Whether or not municipal off-street parking facilities can be legally exempted from taxation is a premature question in proceeding for writs of prohibition and mandamus to stop chancery case to obtain a declaratory decree to determine that such facilities cannot legally be acquired through use of moneys collected from on-street parking facilities (CL 1948, § 141.161; Detroit Ordinances Nos 672-E, 804-E).

REFERENCES FOR POINTS IN HEADNOTES

[2] 17 Am Jur, Dismissal and Discontinuance § 46.
[3–5] 24 Am Jur, Garages, Parking Stations, and Liveries § 10; 37 Am Jur, Municipal Corporations §§ 107, 288; 38 Am Jur, Municipal Corporations § 484.
[3–5] Power of municipality to establish or conduct public garage or parking station. 8 ALR2d 373.
[4] 43 Am Jur, Public Securities and Obligations § 58.
[5–7] 42 Am Jur, Public Funds § 57.
[8] 50 Am Jur, Statutes §§ 379–381.
[11] 14 Am Jur, Costs § 91.

2. Same—Mandamus—Questions Reviewable—Chancery Cases.
   The controlling question in prohibition to prevent further proceedings on a bill in chancery and mandamus to require the circuit judges to dismiss the case is to determine whether the bill in the chancery case sets up proper and sufficient grounds for the declaratory decree and the injunctive relief sought.

3. Municipal Corporations—Home-Rule Cities—Parking Facilities.
   A home-rule city is authorized by statute to acquire, operate and maintain parking facilities for vehicles within its corporate limits, including the fixing and collection of charges therefor on a public utility basis (CL 1948, § 117.4h).

4. Same—Automobile Parking Facilities—Revenue Bond Act.
   Any municipal corporation may acquire public improvements, including automobile parking facilities, under the revenue bond act and exercise such powers, notwithstanding no bonds are issued under such act (CL 1948, § 141.104).

5. Same—Home-Rule Cities—Off-Street Parking Facilities.
   A home-rule city may acquire off-street parking facilities for automobiles from proceeds of revenue bonds payable not only from use of such facilities but from surplus funds acquired through meters installed on the public streets (CL 1948, §§ 117.4h, 141.104).

6. Same—Automobile Parking Facilities—Revenue Bond Act—Public Utilities.
   Automobile parking meters are a "public improvement" within the meaning of the revenue bond act, permitting acquisition and operation by municipalities, although not a "public utility" (CL 1948, § 141.104).

7. Same—Off-Street Parking Facilities—Public Funds.
   The expenditure of public funds of municipalities to acquire and operate off-street parking facilities involves public safety and is lawful.

8. Same—Parking Facilities—Profit.
   Whether or not parking facilities will be operated at a profit by a municipality is an administrative problem for the legislature and the municipal authorities and not a matter primarily to be decided by the courts.

9. Same—Business—Immunity from Competition.
   A city which engages in a commercial line of activity that competes with and damages one of its inhabitants in his trade

or business does not entitle him to relief against such municipal action for the city owes him no immunity from competition.

10. PROHIBITION—MANDAMUS—PARTIES.

Merits of question involved, as presented by writs of prohibition and mandamus, are determined rather than deciding case on permissible ground that plaintiffs in proceeding sought to be stopped were not proper parties.

11. COSTS—PUBLIC QUESTION—PROHIBITION—MANDAMUS—PARKING FACILITIES.

No costs are allowed in proceeding to obtain writs of prohibition and mandamus to stop chancery case by which it was sought to enjoin city from acquiring off-street parking facilities, a public question being involved.

Original petition by the City of Detroit, a municipal corporation, John H. Witherspoon, controller, and James A. Hoye, director of traffic, for writs of prohibition and mandamus, directed to Ira W. Jayne, Chester P. O'Hara, and other Wayne Circuit Judges, and to Service Parking Grounds, a Michigan corporation, and others, who had instituted chancery suit to invalidate city ordinances aimed to develop off-street parking facilities. Submitted January 14, 1954. (Calendar No. 46,054.) Writs granted February 18, 1954. Rehearing denied April 5, 1954. Appeal dismissed by the Supreme Court of the United States October 14, 1954.

*Paul T. Dwyer,* Corporation Counsel, and *Vance G. Ingalls, Helen W. Miller* and *Julius C. Pliskow,* Assistants Corporation Counsel, for plaintiffs.

*George E. Brand,* and *George E. Brand, Jr.,* for individual defendants.

*Amici Curiae:*

Automobile Club of Michigan, by *Erickson, Dyll, Marentay, Van Alsburg & Slocum.*

Downtown Property Association, Building Owners and Managers Association, Detroit Hotel Associa-

tion, Traffic Safety Association of Detroit, and Detroit Convention and Tourist Bureau, by *Wilber M. Brucker, H. William Butler,* and *Clark, Klein, Brucker & Waples.*

City of Ann Arbor, by *William M. Laird,* City Attorney, and *Miller, Canfield, Paddock & Stone.*

Boyles, J. The city of Detroit files here a petition for writs of prohibition and mandamus, to prevent the circuit judges in Wayne county, and the plaintiffs in a certain chancery case now pending in their court, from taking any further steps or proceedings in said case. We issued an order to said defendants to show cause why the petition should not be granted. Responses have been filed, briefs filed by the parties and by *amici curiae* by leave of court, and oral arguments heard.

The bill of complaint in said case was filed December 15, 1953, by the Service Parking Grounds, a Michigan corporation, and 15 other owners or operators of privately-owned automobile parking lots in Detroit, to obtain a declaratory decree holding that proceeds from parking meters for on-street automobile parking in Detroit cannot be legally combined with those from city-owned off-street parking facilities for bond financing; that money collected from street parking meters cannot legally be used for off-street parking facilities; that Detroit ordinances 672-E and 804-E, which provide for acquiring off-street parking facilities and for issuing revenue bonds to finance the same, are invalid; and to declare that off-street parking facilities cannot be legally exempted from taxation. (This final question is premature and does not require consideration now. But see CL 1948, § 141.161 [Stat Ann 1949 Rev § 5.-2426(1)].)

The bill of complaint further asks that the city be enjoined from consummating the revenue bond financing for municipal off-street parking contemplated by the city, as provided for in said 2 city ordinances; from using money collected from street parking meters for municipal off-street parking facilities; and from using any surplus money from street parking meters to pay revenue bonds and interest.

No answer has been filed to said bill of complaint. On December 30, 1953, the city filed a motion to dismiss the case, which, however, has not been brought on for hearing. Instead, on December 31, 1953, the city filed in this Court the instant petition for a writ of prohibition to prevent further proceedings on said bill of complaint and for mandamus to require the circuit judges to dismiss the case. The controlling question is whether the bill of complaint sets up proper and sufficient grounds for the declaratory decree and the injunctive relief sought. The city claims that it has been filed purposely to delay the revenue bond financing.

Detroit is a home-rule city. By charter,* it has been authorized to acquire, establish, operate and maintain facilities for the parking of automobiles and to acquire the necessary land therefor. Such a provision in the city charter is authorized by the home-rule act, as follows:†

"Each city may in its charter provide:  *  *  *

"(6) For the acquiring, establishment, operation, extension and maintenance of facilities for the storage and parking of vehicles within its corporate limits, including the fixing and collection of charges for services and use thereof on a public utility basis, and for such purpose to acquire by gift, purchase, condemnation or otherwise the land necessary therefor."

---

* Detroit charter, title 3, ch 1, § 12(v).
† CL 1948, § 117.4h (Stat Ann 1949 Rev § 5.2081).

The city is also similarly authorized by the revenue bond act,* as follows:

"Any public corporation is authorized to  *  *  * acquire  *  *  * 1 or more public improvements and to own, operate and maintain the same, within and/ or without its corporate limits, and to furnish the services, facilities and commodities of any such public improvement to users within and/or without its corporate limits:  *  *  *

"(d) No commercial enterprise, other than the parking or storage of motor vehicles, shall be conducted or authorized at or upon any automobile parking facility authorized under the provisions of this act.

"The powers in this act granted may be exercised notwithstanding no bonds are issued hereunder."

In 1947 the city adopted ordinance 213-E creating a municipal parking authority, to have general supervision over all municipally-owned facilities for parking and storage of motor vehicles. In 1948 the city adopted ordinance 236-E amending a previous ordinance and providing that the coins collected from parking meters be deposited in a special parking-meter fund to be used for the cost of acquiring and installing parking meters, cost of supervision, inspection, maintenance, supply of parts, cost of collection, and enforcement of the ordinance. It further provided as follows:

"Any balance remaining after use of the funds as hereinbefore provided, shall be used, upon due appropriation by the common council, for the acquisition and installation of other traffic control devices and for the acquisition, construction and operation of off-street parking facilities."

In 1952 the city adopted ordinance 672-E. After reciting that the city was in urgent need of providing

---

* PA 1933, No 94, as last amended by PA 1947, No 204 (CL 1948, § 141.104 [Stat Ann 1949 Rev § 5.2734]).

accessible off-street parking facilities to relieve congestion, the ordinance provided for acquiring off-street parking facilities. It further provided that parking facilities, both on-street and off-street, should be operated as a single automobile parking system, and for issuing revenue bonds to pay the cost of acquiring and maintaining off-street parking facilities. In 1953, effective December 10th, the city adopted ordinance 804-E, amending ordinance 672-E above referred to. Essentially, it continued in effect the previous provisions authorizing the acquisition and operation of off-street parking facilities, the use of parking meter revenues and funds then or thereafter in the city treasury for those purposes, and the issuing of additional revenue bonds in the amount of $2,400,000 to pay for the cost of acquiring and making available for use the municipal off-street parking facilities therein referred to.

The plaintiffs, operators of privately-owned automobile parking lots, by their bill of complaint claim that the 2 city ordinances, 672-E and 804-E, above referred to, are invalid and that the city does not have the right to acquire, operate and maintain off-street automobile parking facilities or to issue revenue bonds for that purpose. Succinctly stated in their bill of complaint, the plaintiffs' claim is as follows:

"Under the circumstances, ordinances Nos 672-E and 804-E illegally bind the city of Detroit to subsidize each and every of said off-street facilities out of the excess money being or to be collected by the on-street parking meters and to pay the deficiencies in maintenance, operation and taxes of each of said facilities and to pay the principal of, and interest on, the revenue bonds out of said meter money, and to maintain said meters and such charges as may become necessary to meet said deficiencies for 30 years or until all bonds and interest shall be paid in full

regardless of the advisability of maintaining said meters upon the city streets and regardless of the expense of said regulation.   *   *   *

"The city of Detroit has no right or power to acquire, own, maintain or operate off-street automobile parking facilities, either as contemplated by said ordinances or otherwise."

Plaintiffs' claims have been answered in the negative by several decisions of this Court where the same questions were involved.

· Automobile parking meters are a "public improvement" within the meaning of the revenue bond act, although not a "public utility." Control of and revenue from street parking meters may be legally combined with municipally-owned-and-operated off-street parking facilities within said act, for the purpose of financing by the issuance of revenue bonds. Money collected from street parking meters may be used for off-street municipally-owned parking facilities. The expenditure of public funds to acquire and operate off-street parking facilities involves public safety and is lawful. *Wayne Village President* v. *Wayne Village Clerk,* 323 Mich 592 (8 ALR2d 357). The minor variations between the instant situation and that in the *Wayne Village Case,* claimed by counsel for the plaintiffs, have no material bearing on the conclusions reached in that case.

Detroit city ordinances 672-E and 804-E, the legality of which is challenged by the plaintiffs in the chancery case, are copied from and are substantially the same as the ordinances considered by the Court in the *Wayne Village Case, supra,* and are substantially the same as the ordinances which were under like attack and held valid by this Court in *Cleveland* v. *City of Detroit,* 324 Mich 527 (11 ALR2d 171). There is no merit in plaintiffs' present claim that the city cannot legally collect surplus or "profit" money from street parking meters, to be used to fi-

nance off-street parking facilities. *Wayne Village President* v. *Wayne Village Clerk, supra; Bowers* v. *City of Muskegon,* 305 Mich 676. The question whether or not the parking facilities will be operated at a profit is an administrative problem for the legislature and the municipal authorities. It is not a matter primarily to be decided by the courts.

In their bill of complaint the parking lot owners have set up at length the value and extent of their properties, their dependency on profitable operation of their parking facilities, and their loss or damage if the city is allowed to enter into competition with their business by off-street automobile parking. They ask that the city be enjoined from acquiring and operating off-street parking facilities because of those facts and circumstances. They claim that Detroit lacks authority to engage in a public improvement, such as automobile off-street parking, in competition with them, to their financial damage and loss. This Court has held to the contrary:

"In the exercise of proprietary and business powers of a municipal corporation, it is governed by the same rules which control a private individual or a business corporation: in such case the fact that a city engaging in a commercial line of activity competes with and damages one of its inhabitants in his trade or business does not entitle him to relief against municipal action for the city owes him no immunity from competition." *Andrews* v. *City of South Haven* (syllabus), 187 Mich 294 (LRA1916A, 908, Ann Cas 1918B, 100).

The proviso in the revenue bond act hereinbefore quoted indicates that off-street parking is considered as a "commercial enterprise" which a municipality is authorized to acquire. In authorizing parking "without the corporate limits," it contemplates off-street parking. A municipality does not have city streets outside the corporate limits.

Counsel for the city claim that the writ of prohibition should issue because of the lack of proper parties plaintiff, seeking relief as taxpayers. Assuming that the plaintiffs by their bill of complaint are seeking injunctive relief against the city, *as taxpayers,* counsel for the city argue that the plaintiffs should be prohibited from maintaining their bill of complaint because, as taxpayers, they have no standing in court. Were this the only question involved, we would agree to granting the writ to compel dismissal of the bill of complaint on that ground, having recently so held in *Menendez* v. *City of Detroit,* 337 Mich 476, and *Nichols* v. *State Administrative Board,* 338 Mich 617.

However, it should be noted that the plaintiffs, in their bill of complaint, ask for a declaratory decree, to settle controlling questions of law; and counsel for the city likewise ask that we decide the merits of the questions raised here in order to have an early decision, because of the need for prompt relief of congested traffic and parking conditions in Detroit and to avoid any further delay in the issuance of revenue bonds. With that in mind, instead of taking a short cut by deciding the matter on the ground that the plaintiffs have no standing in court, we have concluded to follow the method recently adopted in the *Nichols Case, supra,* and decide the merits of the questions raised.

The writs of prohibition and mandamus will issue. No costs, a public question being involved.

Butzel, C. J., and Carr, Bushnell, Sharpe, Reid, Dethmers, and Kelly, JJ., concurred.