# JOHN WRIGHT & ASSOCIATES, INC. v. CITY OF RED WING AND OTHERS.

106 N. W. (2d) 205.

November 18, 1960—No. 38,138.

*Fryberger, Townsend & Ewing,* for appellant.

*Francis H. Watson,* for respondent Fraser.

*Charles Richardson,* City Attorney, and *Holst, Erickson, Vogel & Richardson,* for other respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court.

Litigation concerning the will and trust of the late Theodore B. Sheldon, a resident of Red Wing who died in 1900, has been before this court on three previous occasions. See, Longcor v. City of Red Wing, 206 Minn. 627, 289 N. W. 570; John Wright & Associates, Inc. v. City of Red Wing, 254 Minn. 1, 93 N. W. (2d) 660; Id. 256 Minn. 101, 97 N. W. (2d) 432. The facts and litigation involved have been set out in each of those cases as the situations required. For that reason, a prolonged explanation of the background is unnecessary.

Some of the defendants in the present action are members of the City Council of Red Wing and others are members of the T. B. Sheldon Auditorium Board. James Fraser was also made a party defendant. On January 23, 1959, the auditorium board entered into a lease with Fraser renting a part of the auditorium to him for uses including the showing of motion pictures.

Plaintiff, a taxpayer and the owner and operator of a motion picture theater in Red Wing known as the "Chief," brought this action to enjoin the confirmation or renewal of that lease and to enjoin the making of any other leases in which the lessee might be authorized to conduct a motion picture business in the auditorium. Plaintiff's theater and the auditorium are the only two motion picture theaters in Red Wing although there is a drive-in motion picture theater about 2 miles southeast of the city limits.

The auditorium property was conveyed by deed on October 10, 1904, to the city of Red Wing by the three trustees named in the last will and testament of Theodore B. Sheldon, with the provision, among others, that the care, custody, and management of the property should forever vest in five resident voters of the city, to be known as the T. B. Sheldon Auditorium Board. The auditorium board began to show mo-

tion pictures in the auditorium in 1911 and this continued until our decision in John Wright & Associates, Inc. v. City of Red Wing, 254 Minn. 1, 93 N. W. (2d) 660, referred to herein as the first Wright case.

Although plaintiff has raised many legal questions, it seems to us that the pertinent issues for our determination on this appeal are: (1) Is the present lease within the authority of the city and auditorium board, as agent of the city, or was the action ultra vires? (2) Is the lease in conflict with or in excess of the authority contained in the deed of October 10, 1904, conveying the auditorium to the city? (3) Is the lease in violation of the provisions of the will and trust of Theodore B. Sheldon, and does plaintiff have capacity to raise that issue?

The first time that this court considered the gift of the auditorium was in Longcor v. City of Red Wing, 206 Minn. 627, 289 N. W. 570. Under the facts of that case it was held that a gift on condition for charitable purposes was created rather than a charitable trust.

In the first Wright case, the present plaintiff sought to enjoin the auditorium board from showing motion pictures in the auditorium, and we held that, while the members of the auditorium board were given authority "to let or lease" the premises, no language could be found in the relevant documents indicating that the municipality or the auditorium board—an agency of the municipality—might, itself, engage in a private business upon the premises. After our decision in that case, the district court ordered judgment for plaintiff, permanently enjoining defendants, City of Red Wing, its council, and the T. B. Sheldon Auditorium Board, or any of them, from engaging in the operation of a motion picture business in the auditorium.

The matter next appeared in this court in John Wright & Associates, Inc. v. City of Red Wing, 256 Minn. 101, 97 N. W. (2d) 432, referred to herein as the second Wright case, which was a mandamus proceeding to compel the district court to enter judgment enjoining leasing the auditorium as allegedly required by the mandate of this court in its opinion in the first Wright case. In denying the writ, this court stated that the question of whether the city or the auditorium board might lease the auditorium to a third party had not been before

the trial court, nor had it been decided in the opinion in the first Wright case. We said (256 Minn. 104, 97 N. W. [2d] 435):

"* * * we held there that the use of the auditorium in the operation of a moving picture business was in excess of the municipal authority and the authority of the board created to manage the auditorium for the reason that the premises were not used for public purposes and that such activity was an unauthorized private commercial business and had no relation to the purposes of a municipal corporation. Whether or not the city or the board may lease the auditorium to a third party for the purpose of operating a moving picture theater is another question which was not before us. Accordingly, the trial court did not proceed in a manner which was inconsistent with our opinion."

It therefore follows that the issue of the right to lease to Fraser, a third party, is not controlled by the opinion in the first Wright case since that case merely determined that the auditorium board could not itself show motion pictures in the auditorium.

■ It is our opinion that the auditorium board, an agency of the city, acted within its authority in leasing a part of the auditorium to a private person for purposes of theatrical entertainment, including the showing of motion pictures.

In Anderson v. City of Montevideo, 137 Minn. 179, 162 N. W. 1073, we held that where a municipal corporation in good faith erects a building for municipal purposes and includes an auditorium which is no longer needed for public use, and the leasing thereof will lighten the burden of taxation, the municipality has a legal right to lease the same for private use. See, also, Penn-O-Tex Oil Co. v. City of Minneapolis, 207 Minn. 307, 291 N. W. 131.

The lease here is limited to a period of 2 years. The lessee agrees to quit and deliver up the premises to the lessor peaceably and quietly at the end of that time or at any previous termination thereof for any cause. The lessor reserves the right to use the leased premises at any time it desires, with no reduction in rent on account of such use as long as the lessor does not use the premises for more than 12 days in any one year or more than 2 days in any one month. The lessee further agrees not to assign or underlet the premises or any part

thereof without the consent of the lessor or to use them for any so-called extrahazardous purpose. An examination of the lease satisfies us that the board, as an agency of the city, exercised every reasonable precaution to protect the rights of the city and that it did not go beyond its authority in entering into the lease.

■ We are also of the opinion that the lease was not in conflict with or in excess of the authority contained in the deed of October 10, 1904, conveying the auditorium to the city. The deed provided, among other things:

"The exclusive care, custody and management of said property shall be forever vested in five resident voters of said City, who shall constitute a body to be known as 'The T. B. Sheldon Auditorium Board'. Said Board shall for and in behalf of said City have the general charge of the said property, and full power and authority to let or lease the same for musical and theatrical entertainments, public meetings, lectures and such other purposes as in their judgment may contribute to the education, enjoyment, improvement or amusement of the people of Red Wing. Such Board shall also have exclusive power to fix the rental of said building for such purposes; and may in their discretion grant the use of said Auditorium for any local public purpose or for entertainments of an unusually high character, or for memorial services of the Grand Army of the Republic or for similar societies, or for the exercises or entertainments of the public schools or other institutions of learning or of any literary, musical, social, charitable society of Red Wing, or of any political or fraternal organization free or at such reduced rates as they may deem proper."

The deed further provided that all revenues derived from the property should be paid to the city treasurer and be kept as a separate special fund to be known as the "Auditorium Fund" and paid out by the treasurer for such purposes as the board might see fit to use such funds for the care, maintenance, and conduct of the auditorium.

In City of St. Paul v. Chicago, M. & St. P. Ry. Co. 63 Minn. 330, 352, 63 N. W. 267, 65 N. W. 649, 68 N. W. 458, 460, 34 L. R. A. 184, this court held that, where a grant was made "for a specific, limited, and definite public use," the subject of the grant could

not be used for another and different use. However, Mr. Justice Mitchell, who wrote the opinion, commented (63 Minn. 353, 68 N. W. 460):

"However, no narrow or unreasonable definition should be placed upon the nature of the use to which the property has been dedicated, nor any unreasonable limitation imposed upon the discretion of the legislature in regulating that use."

Mr. Justice Mitchell then went on to say that it is only when there has been a clear diversion of the property to a use inconsistent with that for which it was dedicated that the courts would feel warranted in interfering, and that this will usually be a question of fact depending upon the facts and circumstances of each particular case.

We can find no such specific, limited, and definite public use contained in the deed to the city which would justify our saying that the board was restricted by the language of the deed from executing the lease. An examination of the record and exhibits satisfies us that there can be no question but that the auditorium was intended and designed as a theater.

■ It is our opinion that the lease does not violate the provisions of the will of the late Theodore B. Sheldon. The relevant portion of the will is as follows:

"All the rest and residue of my estate including all lapsed legacies, if any, I hereby give devise and bequeath to my executors hereinafter named and to the survivors and last survivor of them and to their successors in said trust; but in trust and for the purposes following to-wit: to be by them and within fifteen years after my death used and applied together with all income and increase arising therefrom to the creation, establishment, support or maintenance of any such charitable or other public institution or for any such public use as said Trustees may in their discretion see fit to appropriate or apply the same, hereby intending to give them absolute discretion as to the time manner and purposes of such use and appropriation of said rest and residue of my estate with only the two following restrictions and limitations to-wit: 1st that the whole amount of said 'rest and residue' and all income therefrom and increase thereof shall be so used and

appropriated within fifteen years from the time of my death and 2nd that the same be so used and appropriated for some public and beneficent but non-sectarian purpose in the said city of Red Wing."

The three trustees named in the will purchased real property in the city of Red Wing and constructed a large auditorium. They conveyed it to the city and inserted provisions in the deed concerning the management and use of the auditorium as referred to above.[1]

Although we do not believe that the lease violates the provisions of the will, it is our opinion, under the circumstances here, that plaintiff has no capacity to raise the issue. We have already stated in Longcor v. City of Red Wing, 206 Minn. 627, 289 N. W. 570, that the will created a gift on condition for charitable purposes rather than a charitable trust. We also said in that case that the attorney general is the proper party plaintiff to compel a compliance with the conditions impressed upon a gift for charitable purposes and that a citizen, resident, and taxpayer who sues on his own behalf and on behalf of all the beneficiaries of the "will and the charity" cannot maintain the action.

Again, the concurring opinion of Mr. Justice Murphy in the second Wright case states (256 Minn. 104, 97 N. W. [2d] 439):

"* * * A citizen, resident, or taxpayer may not sue in his own behalf to compel compliance with conditions impressed upon a gift for a charitable purpose. Only the attorney general may do that. 3 Dunnell, Dig. (3 ed.) § 1423c."

Minn. St. 501.12, subd. 3, relating to express trusts for charitable, educational, religious, and other public uses, provides:

"* * * The attorney general shall represent the beneficiaries in all cases arising under this section and it shall be his duty to enforce such trusts by proper proceedings in the courts."

Since the plaintiff cannot question or enforce the conditions of the gift as a citizen, resident, or taxpayer, it is our further opinion that it

---

[1]The Minnesota legislature, by L. 1903, c. 22, granted to the city the authority to accept such gift and to manage said property consistent with the terms or conditions stated in the instrument by which the property was conveyed to the city.

has no capacity to question the conditions of the gift merely because it is a competitor of the lessee, Fraser. The municipality or its agency is not operating the auditorium moving picture theater. Even if it were, it has been held that damages because of competition by a municipal or governmental agency, operating an otherwise lawful business, do not support a cause of action or a right to sue. Tennessee Elec. Power Co. v. Tennessee Valley Authority, 306 U. S. 118, 59 S. Ct. 366, 83 L. ed. 543; Alabama Power Co. v. Ickes, 302 U. S. 464, 58 S. Ct. 300, 82 L. ed. 374; City of Detroit v. Wayne Circuit Judges, 339 Mich. 62, 62 N. W. (2d) 626.

It is our opinion that the judgment of the trial court should be affirmed.

Affirmed.