CITY OF SAINT PAUL, Respondent,

v.

The STATE OF MINNESOTA DE-
PARTMENT OF REVENUE,
et al., Appellants.

Nos. A07–1763, A07–1764, A07–
1765, A07–1766, A07–1767.

Court of Appeals of Minnesota.

Aug. 5, 2008.

John J. Choi, St. Paul City Attorney, Louise Toscano Seeba, Assistant City Attorney, St. Paul, MN, for respondent.

Lori Swanson, Attorney General, Rita Coyle DeMeules, Assistant Attorney General, St. Paul, MN, for appellants.

Considered and decided by MINGE, Presiding Judge; MUEHLBERG, Judge; and HUSPENI, Judge.**

## OPINION

MUEHLBERG, Judge.*

In this action initiated by respondent City of St. Paul (city) to prevent reversion of tax-forfeited lands, appellant State of Minnesota (state) challenges the district court's grant of summary judgment to the city. The state contends that the district court erred by determining that the city's use of the tax-forfeited parcels was authorized by the restricted-use deeds issued when the parcels were transferred to the

---

** Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

city. Because the city's use of the parcels that were conveyed for "park purposes" is consistent with its application for conveyance of the four parcels and the use has not changed in the interim, we affirm the district court's decision as to those four parcels. But because the city is no longer using the fifth parcel for snow removal and disposal of street-sweeping debris, which was the purpose set forth in its application for conveyance, and because state policy encourages the best use of tax-forfeited lands in the public interest, we reverse as to that parcel.

## FACTS

Under Minn.Stat. § 282.01, subd. 1a (1980, 1992, 1994), the Commissioner of Revenue (commissioner) conveyed five parcels of tax-forfeited land to the city by restricted-use deeds. In 1980, the commissioner conveyed parcel 0133[1] to the city to use "exclusively for snow removal and street cleaning disposal." In 1993, the commissioner conveyed parcels 0080, 0081, and 0053 to the city "exclusively for park purposes." In 1995, the commissioner conveyed parcel 0123 to the city, also "exclusively for park purposes." In accordance with the statute, all five parcels were conveyed to the city free of charge because the city agreed to use them for an authorized public purpose.

The city used 0133 for snow removal and street sweeping disposal from 1980 to 1995, when the site was deemed full because it contained 50 feet of street-sweeping residue. The residue remains on the site, because the city has not removed it. In 2007, the market value of this parcel was estimated to be $518,400.

In its applications for use-deeds for parcels 0080 and 0081, which are contiguous, the city indicated that the parcels would be used for "park purposes ... wet land preservation." Both parcels are "low, partially wooded" land. Since the conveyance in 1993, the parcels have been left undisturbed.

The application for parcel 0053 states that it would be used for "park purposes," specifically for "slope preservation [on] Wheelock Parkway." This parcel adjoins a parkway and is a "natural bluff," which has been left undeveloped.

The city's application for 0123 states that it will be used for "park purposes," specifically as "open space—Natural prairie remnant." This parcel is surrounded by railway right-of-way and private property; there is no access to the parcel, except over privately owned land. It is partially wetland and partially rolling prairie. The parcel is still in its natural state.

Minn.Stat. § 282.01, subd. 1a, permits conveyance of tax-forfeited property, without purchase, to a municipality for "an authorized public use." The statute does not define this term. The Department of Revenue employs a "Red Book" to guide the public about departmental policies; it includes department guidelines for tax-forfeited properties, but these are guidelines, not officially enacted rules. When the conveyances were made to the city, the guidelines contained a two-part definition for "an authorized public use." First, the use had to be authorized by statute, law, or charter; second, the parcel had to be available to the general public or the public purpose must directly benefit the general public. In 2005, these guidelines were amended to specifically exclude "open space" as an authorized public use because it "does not imply sufficient utilization of the land."

---

1. Each parcel will be referred to by the last digits of its property identification number, for ease of reference, and therefore do not address this assertion.

The St. Paul City Charter defines "park purposes" to "include, but not be limited to mean, playground, trail, parkways, open space and any other recreational purpose." St. Paul, Minn., City Charter ch. 13, § 13.01.1 (2007) (Charter). The city's legislative code defines "open space" as "[l]and and water areas retained for use as active or passive recreation areas or for resource protection." St. Paul, Minn., Legislative Code ch. 60, § 60.216 (2007) (Code). "Parks," as opposed to "park purposes," are more narrowly defined as "all the public grounds and squares maintained as pleasure grounds and designated recreation areas by the City of St. Paul." *Id.* at ch. 170, § 170.01 (2007).

All four of the parcels used for park purposes are still in their natural state; there is no information in the record as to whether they are actively used for recreational purposes, but there is also no prohibition against entry onto the parcels for recreational purposes.[2]

Ramsey County, which would benefit from the sale of tax-forfeited lands located within the county, advised the city that its use of the parcels was not in compliance with the restricted-use deeds. When the city refused to reconvey the parcels to the state, the county contacted the state to complain about the use of these parcels. On May 31, 2006, the commissioner issued declarations of reversion for the five parcels. The city began these five lawsuits to prevent reversion.

The parties agreed that there were no material facts in dispute and moved for summary judgment. The district court granted summary judgments to the city, concluding that the city's code and charter provided definitions for park purposes and that the city was in compliance with the

use deeds. The state appealed from these five judgments. This court consolidated the appeals.

### ISSUES

1. Did the district court err by concluding that use of the parcels as open space and for resource protection is an "authorized public use" within the meaning of Minn.Stat. § 282.01, subd. 1a (2006)?

2. Did the district court err by concluding that storage of street-cleaning debris is an "authorized public use" in compliance with the use deed issued under Minn.Stat. § 282.01, subd. 1a?

### ANALYSIS

■ The application of a statute to undisputed facts is a legal question, which this court reviews de novo. *Harrison ex rel. Harrison v. Harrison,* 733 N.W.2d 451, 453 (Minn.2007). Generally, we interpret a statute according to the plain meaning of its language; if a statute is ambiguous or is reasonably susceptible to more than one interpretation, the court may "consider the circumstances under which the law was enacted, the consequences of a particular interpretation, and the law's legislative history." *Id.;* Minn.Stat. § 645.16 (2006).

*Statutory Interpretation: Park Purposes Parcels*

■ The commissioner of revenue may sell tax-forfeited land to a municipality for any public purpose at market value or may convey tax-forfeited land free of charge to a municipality for an "authorized public use." Minn.Stat. § 282.01, subd. 1a (2006). The statute does not define the term "authorized public use." If the municipality

---

**2.** Although appellant asserted at oral argument that there is encroachment by private parties on one or more of the parcels, we

cannot determine this from the record before us.

fails to use the land for the public use specified, the municipality may either purchase the land or reconvey it to the state. Minn.Stat. § 282.01, subd. 1d (2006). If the municipality does neither, the commissioner must issue a declaration of reversion to the state. Minn.Stat. § 282.01, subd. 1e (2006). Unless the municipality appeals to the district court within 30 days, the reversion becomes final. *Id.*

■ Minn.Stat. § 282.01, subd. 1e, provides that an appeal from a declaration of reversion is a civil action to be tried in the district court of the county in which the parcel is located. Thus, the procedures of the tax court and the presumptions inherent in tax court proceedings raised in oral argument by appellants do not apply to these proceedings. *Cf.* Minn.Stat. § 282.01, subd. 1e, *with* Minn.Stat. § 270C.924 (2006) *or* Minn.Stat. § 271.06 (2006).

By its charter, the city has the authority to acquire property needed for a public use or purpose. Charter, ch. 13, § 13.01. If the city acquires property for "park purposes," it may not be diverted to any other use, except as prescribed by the charter. *Id.* at ch. 13, § 13.01.1. The charter defines "park purposes" to include, but is not limited to, use as a "playground, trail, parkway[ ], open space and any other recreational purpose." The city's code, in its chapter on zoning, defines "open space" as "[l]and and water areas retained for use as active or passive recreation areas or for resource protection." Code, ch. 60, § 60.216.

■ Thus, reading the city's code and charter together, the city is authorized to acquire and use property for park purposes, which include playgrounds, trails, parkways, open space, and any other recreational purposes. These are authorized public uses within the meaning of the statute.

■ The commissioner suggests that the charter language referring to "any other recreational purpose" modifies "open space" and that therefore open space that is not used recreationally is not used for "park purposes." We do not agree. The phrase "any other recreational purposes" does not specifically modify "open space" but is consistent with the charter's broadly expansive definition of "park purposes."

The commissioner also suggests that a more restrictive definition of "parks" be used when analyzing whether the parcels are being used for park purposes. The statute does not define "parks," but the city code does, and includes "all the public grounds and squares maintained as pleasure grounds and designated recreation areas." Code, ch. 170, § 170.01. This section of the code does not provide a definition for the broader concept of "park purposes," which is the language on the city's applications for conveyance of the tax-forfeited parcels.

Minn.Stat. § 282.01, subd. 1c (2006), states that a restricted-use deed issued by the commissioner "must be conditioned on continued use for the purpose stated in the application." In this case, the city's applications indicated that the parcels would be used for park purposes, but each application included language further defining that concept: "wet land preservation," "slope preservation," and "open space— Natural prairie remnant." The city has continued to use the parcels precisely as stated in its applications. The basis for reverter under the statute is that a municipality has failed to put the land to the specified public use or has abandoned that use, neither of which is the case here.

The question before the court is one of first impression. The commissioner has cited four cases from other jurisdictions in support of his assertion that land used as

open space should not be included in the definition of land used for a park purpose. None of these cases supports his arguments. *See Siegel v. City of Branson*, 952 S.W.2d 294, 297 (Mo.App.1997) ("The definition of park is not limited to a public place of green lawns, walkways and benches. The definition is broad, and the question when applying this definition is whether a particular use of property serves a public purpose"); *City of Lincoln v. Townhouser, Inc.*, 248 Neb. 399, 534 N.W.2d 756, 760 (1995) ("A park may be little more than an area maintained in its natural state."); *Cohen v. City of Lynn*, 33 Mass.App.Ct. 271, 598 N.E.2d 682, 686 (1992) (in analyzing definition of "park" or "park purposes," concluding that general definition is "expansive," and includes "a place to which the public at large may resort to for recreation, air, and light"); *Burnham v. City of Jackson*, 379 So.2d 931, 933 (Miss.1980) (citing definition of park as "[a]n area of land reserved from settlement and maintained in its natural state as a public property").

Because the city's use of the parcels is an authorized public use under its code and charter and that authorized public use has not changed since the commissioner issued the use deed, the state has failed to establish grounds for reverter. The district court therefore did not err by granting summary judgment in favor of the city as to these four parcels.

*Snow Removal/Disposal of Street Sweeping Parcel*

 The use deed for parcel 0133 states that the property is to be used for "snow removal and street cleaning disposal." Neither party disputes that this is an authorized public use. But the commissioner argues that because the property has been filled with street-cleaning debris and has not been used for snow removal or street-cleaning purposes since 1995, the city is no longer using the property in conformance with the use deed, although the city continues to store street sweeping debris at the site. The commissioner also argues that the use deed implies active use, rather than passive storage. We agree. When a deed has made a grant of property "for a specific, limited, and definite public use, the subject of the grant could not be used for another and different use." *John Wright & Assoc., Inc. v. City of Red Wing*, 259 Minn. 111, 115–16, 106 N.W.2d 205, 208 (1960) (quotation omitted). Courts must not narrowly or unreasonably define the nature of a use or restrict the grantee's discretion, but nevertheless may intervene when there is a "clear diversion of the property to a use inconsistent with that for which it was dedicated." *Id.* at 116, 106 N.W.2d at 208. The uses for which the city acquired this parcel have been exhausted or abandoned, and the state has therefore established grounds for reverter.

Our reasoning is supported by the state's general policy as to tax-forfeited lands, which is to "encourage the best use of tax-forfeited lands, recognizing that some lands in public ownership should be retained and managed for public benefits while other lands should be returned to private ownership." Minn.Stat. § 282.01, subd. 1 (2006). The city acknowledges that it no longer uses or needs the site for snow removal and disposal of street sweeping debris, except in the very broadest context of storage. The record, which includes evidence of the increasing value of this parcel and possible alternate uses for the property, confirms that maintaining this parcel as an empty and functionally abandoned site is not the best use of tax-forfeited lands, which the state holds in trust for the public's benefit.

Because the city has exhausted or abandoned the use for which the state conveyed

this parcel, the commissioner properly issued a notice of reversion, and the district court erred by denying the reversion of parcel 0133.

## DECISION

The undisputed record facts here establish that the city continues to use parcels 0080, 0081, 0053, and 0123 in accordance with the terms of the restricted-use deeds; summary judgment in the city's favor was therefore appropriate as to these parcels. But the city is no longer using parcel 0133 in accordance with the restricted-use deed. Because the state has established grounds for reverter on these undisputed facts, the district court erred by granting summary judgment in the city's favor on this parcel. We therefore reverse the district court's grant of summary judgment as to parcel 0133.

**Affirmed in part and reversed in part.**