IN THE MATTER OF THE ESTATE OF KATE LITTLE, DE-
CEASED.

DUNCAN D. LITTLE AND ANOTHER v. UNIVERSALIST
CONVENTION OF MINNESOTA.[1]

July 18, 1919.

No. 21,308.

**Will — construction of devise to religious corporation.**

The will of testatrix clearly discloses an intention that the religious
corporation representing her faith should dispose of the bulk of her
property for benevolent and religious purposes, in accordance with the
practice of such corporation. It is *held* that the devise should be con-
strued as absolute to the corporation and not in trust, although words
importing a trust are used in the will. The direction that the prop-
erty, consisting mainly of a valuable 160 acre farm, be sold and convert-
ed into a fund, only the income of which should be used for benevolent
and religious purposes, merely follows the by-laws and practice of the
corporation and does not indicate a trust. Nor does the fact that one
acre of the farm, the burial plot of herself and her father, is never to
be sold, and that a part of the income from the fund is to be devoted to
the care of the graves, compel the conclusion that the will proposes the
creation of an illegal trust, the corporation being empowered to take
gifts of burial places, and there being nothing in the will restricting the
corporation from permitting other interments in the acre mentioned.

William P. Roberts, as administrator with the will annexed of Kate
Little, deceased, made application to the probate court for Fillmore
county for the assignment of the residue of the estate according to law.
Duncan D. Little and Albert M. Little petitioned the court to assign
the residue of the estate to them as next of kin and sole heirs at law
of decedent, and not according to the terms of the will, for the rea-
son that the attempted testamentary disposition was null and void. The
matter was heard by Michener, J., who made findings that the Univer-
salist Convention of Minnesota was entitled to the estate belonging to

[1]Reported in 173 N. W. 659.

decedent. From the judgment of the probate court the heirs appealed to the district court, where the appeal was heard by Catherwood, J., who affirmed the order of the probate court. From the judgment entered pursuant to the order for judgment, the heirs appealed. Affirmed.

*Hopp & Larson* and *Gray & Thompson,* for appellants.

*Horace W. Roberts,* for respondent.

HOLT, J.

This appeal involves the validity of the will of Kate Little, deceased. The district court on appeal affirmed the probate court's distribution of the estate according to the terms of the will, and the heirs appeal.

The father of testatrix owned a 160 acre farm at the time of his death. It was located near Preston, this state, and had been his homestead for many years. He was buried on the farm. Testatrix, his sole heir, inherited the homestead. In 1890 she made her will. She died in 1916. She had never married, and left no nearer blood relatives than first cousins. Two of these and the children of a deceased first cousin are the appellants. The portions of the will here material may be thus stated:

"First. After all of my just and lawful debts and all of the expenses of my last sickness and of my funeral and all expenses of the administration of my estate are paid, I give, devise and bequeath in trust to 'The State Convention of Universalists of the State of Minnesota,' all of the property and estate, real, personal and mixed, of which I shall die seized, upon the following terms and conditions and for the following purposes, to wit:

"Second. I direct and strictly enjoin my said devisee, and legatee forever to have charge and control of my father Duncan M. Little's grave and the acre of ground in which said grave is situated, to care for and keep said grave forever supplied with a suitable and proper monument and to care for and keep said grave and the said acre of land in which said grave is situated in a neat, orderly, clean and proper condition and properly inclosed with a fence or fences or such other and proper protection as my said devisee and legatee may deem best and proper, forever, respectively  *  *  *

"Third. I also direct that when dead my remains be interred in said

acre of land by the side of my father and that my grave be kept, cared for and in all things provided for the same as herein provided and directed for in respect to his grave."

The fourth provision relates to a desire that the farm be not disposed of for at least 10 or 20 years after her death.

The fifth describes the farm, locates the acre upon which is the father's grave, and continues: "I also direct that my father's grave and mine be kept constantly inclosed with a fence so that fowls cannot pass through it and that no stock or animals be permitted to pasture or run upon said acre, and I also strictly direct that said acre shall never be sold or disposed of but shall be kept forever and cared for and for the purposes herein provided for.  *  *  *"

The sixth: "I direct that all of the income and profit arising from the estate of which I may die seized after payment of my debts, expenses of last sickness and as hereinbefore provided, be used and expended by my said devisee and legatee in the keeping and caring for the grave of my father and of myself and said acre as hereinbefore provided or so much thereof as may be necessary, the balance of said income and profit to be used and expended by my said devisee and legatee as it may deem best providing it be used for some worthy Christian and charitable purposes but I prefer if possible that such surplus of profits and income be used to pay upon or help defray the salary or compensation of the minister who may be located and preach in the locality where said graves are located and in whose charge as such minister the same may be for all time.  Said minister to be of the Universalist denomination."

The seventh directs that the devisee nominate the executor and trustee under the will, and that such nominee properly qualifies and gives security for the faithful performance of the duties as executor and trustee, and that if the devisee can lawfully act as such that it be appointed "giving proper security as such," and directs and confers full power upon such executor and trustee, under the advice of the devisee, to sell and dispose of all of her estate "except the said acre and graves thereon which shall never be sold;" and also directs the "devisee and legatee to see that my estate is so disposed of and invested to constantly realize the greatest income possible."

Courts aim to carry out the intentions of a testator, and are always inclined to give a construction that will sustain the validity of his gifts. Often those who draft wills are unfamiliar with legal terms or have confused or inaccurate conception of their meaning, hence the whole document must be considered in ascertaining the particular value that the testator placed on certain words or phrases therein.

From a perusal of the will before us it is evident that the main purpose of testatrix was to devote her property to the charitable use of her church, after providing for the proper care of the burial place of her father and herself. If her wishes as to the sale of the farm are heeded, no doubt a considerable fund will be realized, so that but a trifling amount of the income therefrom will suffice to care for the graves, and quite a sum will be available for the intended charities. Taking this evident purpose into consideration, is it permissible to construe the language of the will as a devise to respondent direct and not in trust, for, if it be in trust, invalidity is conceded? The words are: "I give, devise and bequeath in trust to" the respondent all the property upon the terms and conditions stated. Weight may be given to the fact that respondent is a religious corporation empowered by statute to take property by gift. G. S. 1913, § 6622. It was organized for religious, educational, benevolent and missionary purposes. Its by-laws provide that any money or property given to it shall be invested and kept invested according to the gift and kept at all times separate from its general funds, and the income only from such invested funds shall be carried to and used as a part of the general funds if so indicated by the donor. And, at least since 1875, the practice of respondent has been to maintain funds that have been given it intact and make use only of the income thereof. It is clear that the terms and conditions annexed to the gift are but an attempted embodiment in the will of the by-laws and practice mentioned which, no doubt, were well known to testatrix. Apart from the small sum needed to care for the burial plot, respondent is not required to spend the income from the fund or estate for any particular person or object. At most, a desire is expressed as to the expenditures. It is really a gift or devise to respondent direct, to be used according to its known general practice. The use of the words "in trust" in the first part of the will, and the directions as to the giving

of security in the last part, should be attributed to hazy notions of legal terms and requirements.

The condition annexed to the devise of the burial acre is that it shall never be sold. Respondent is authorized to acquire burial grounds by devise. G. S. 1913, § 6600. While perhaps, what are commonly known as denominational or church cemeteries are thereby referred to, it does not, we think, exclude the family burial plot that a person might desire to confide to his church organization, nor are there any restrictions in the will against interment of others in the acre, if respondent deems fit, thus making it a cemetery for the few of its adherents residing in the vicinity. The law against suspending the power of alienation is hardly applicable to the plot of ground wherein rest the dead. At least, the space actually occupied by the grave is not a matter of barter and sale. Hines v. State, 126 Tenn. 1, 149 S. W. 1058, 42 L.R.A.(N.S.) 1138. In Diocese of St. Paul v. City of St. Paul, 138 Minn. 67, 163 N. W. 978, Mr. Justice Bunn states: "It would be unthinkable that land actually in use for burial purposes should or could be sold."

Our conclusion is that the will may be construed as a direct devise to respondent, and as such it should be sustained.

Affirmed.