WYMAN SCHAEFFER v. LILLIE J. NEWBERRY, VILLAGE OF ELBOW LAKE, AND OTHERS.
BENEFICIARIES OF TRUST, RESPONDENTS.[1]

December 14, 1951.

No. 35,531.

---

[1]Reported in 50 N. W. (2d) 477.

Swanson Brothers, for appellant.

J. A. A. Burnquist, Attorney General, and Charles E. Houston, Assistant Attorney General, for respondents.

CHRISTIANSON, JUSTICE.

Plaintiff appeals from a judgment entered in an action to quiet title to certain real estate located within the limits of the defendant village of Elbow Lake, Minnesota, hereinafter referred to as the village. The trial court found that plaintiff has no interest in the land in question, and that the land is owned by the village in trust for the people, to be used for park purposes only. The primary issue on appeal concerns the procedural formalities necessary for a village to validly accept a devise of land "to be used for a public park."

The controversy involves a parcel of land devised to the village by Edward J. Scofield in the following terms:

"I also give, devise and bequeath to the said Village of Elbow Lake, Lot Three of Block Two of Citizens Addition to Elbow Lake, to be used for a public park.

"It is my wish and desire that all of said property and funds be so used at all times that all of the people may receive use thereof daily, provided, that no part of said property or fund shall ever be used for a hospital or anything in connection with a hospital, and may the good Lord palsy the hand of man or woman who votes to divert this said property or fund."

The pertinent events leading up to the action to quiet title extend over a period of 25 years commencing with the death of the testator on May 10, 1926. In November 1927, following the admission of his will to probate, the village council at a regular meeting authorized an application to the county board of Grant county for the cancellation of unpaid taxes on the land in question. The application was granted, statutory proceedings held, and the taxes cancelled.

Since that time no taxes have been assessed against the property. In October 1929, a final decree of distribution was entered in the probate proceedings assigning said land to the village "in fee, simple, absolutely and unconditionally, for park purposes."

It does not appear what disposition, if any, was made of the land during the next seven years, but in 1936 the following motion was passed at a meeting of the village council:

"* * * that the Scofield Park, a gift to the Village by Mr. Scofield, be converted into a zoo. That said park be properly fenced for this purpose, and that the council accept deer from the State of Minnesota to be placed therein."

The fence was built, the park stocked with deer supplied by the state, and a shelter and water trough installed. From 1936 to 1944, the council employed a keeper and purchased feed for the deer. Later, probably sometime during 1944, the deer were liberated, and in 1945 the park was rented at an annual rental of $10 to one Swenson for pasture purposes.

In the fall of 1945 the council voted to sell the land to the highest bidder. Plaintiff's bid of $2,302.50 was high, and the council agreed to sell to him at that price "if we can give satisfactory title to the property." In order "to get clear title to the Deer Park," the attorney for the village obtained quitclaim deeds from Scofield's heirs; and in August 1947 the village council passed a resolution authorizing sale of the land to plaintiff for $2,350. The deed from the village to plaintiff was executed on August 4, 1947.

Thereafter, on September 30, 1947, plaintiff commenced this action to quiet title, which resulted in the judgment from which this appeal is taken. On appeal, plaintiff contends that the village acquired no title to the land under the will of Edward J. Scofield or the resulting probate proceedings, because it failed to accept the devise either in the form prescribed by M. S. A. 1945, § 465.03, or in any other manner. Further, he contends, as a result of the failure to accept the devise, the title to the property passed to and remained in Scofield's residual heirs, was conveyed by their quitclaim deeds

to the village, and by the village's deed to plaintiff, free of restriction.

Section 465.03, which plaintiff maintains governs this case, provided as follows prior to its amendment by L. 1949, c. 294:

"Any city or village may accept a grant or devise of real or personal property and maintain and administer such property for the benefit of its citizens in accordance with the terms prescribed by the donor. Nothing herein shall authorize such acceptance or use for religious or sectarian purposes. Every such acceptance shall be by resolution of the council adopted by a two-thirds majority of its members, expressing such terms in full."

It is undisputed that, although the minutes of the village council reflect unanimous acceptance of the other devises and bequests to the village contained in Scofield's will, nowhere in the minutes does there appear an express acceptance of the devise of the land in question.

The attorney general contends that the devise creates a charitable trust within § 501.11(7), and that its acceptance is not governed by § 465.03. Section 501.11(7), insofar as here material, provides:

"Any city or village may receive, by grant, gift, devise, or bequest, and take charge of, invest, and administer, free from taxation, in accordance with the terms of the trust, real or personal property, or both, for the benefit of * * * any public park, located in, or within ten miles of, such city or village, or for the purpose of establishing or maintaining a kindergarten or other school or institution of learning therein."[2]

To determine which section is to govern, we must first decide the legal nature of the devise.

■ There can be no question that the devise in this case had a charitable purpose. Gifts to municipalities in trust for public parks

_____

[2]Since the second paragraph of § 501.11(7) by its terms applies only to cities of the second class, it is not here applicable and will not hereafter be considered. For convenience of reference, when used in this opinion, § 501.11(7) will refer to the first paragraph only of that section.

are expressly authorized by § 501.11(7), which deals with municipal charitable trusts. Even in the absence of such a provision, gifts for public parks have long been recognized as serving charitable purposes by promoting health and otherwise benefiting the community.[3]

However, a gift may have a charitable purpose and yet not constitute a charitable trust. To create a charitable trust of realty by will, it is also necessary that the testator manifest an intention that the transferee shall hold the gift subject to an equitable duty to serve the charitable purpose.[4] Thus, a breach of trust does not result in destruction of the devise, but instead gives rise to an action against the trustee, which in Minnesota is enforced by the attorney general.[5] On the other hand, where it clearly appears that the testator intends that the *res* shall revert to himself or his heirs if the charitable purpose is not served, the devise is not a charitable trust, but is construed as some type of absolute or conditional gift.[6]

Because of the different consequences resulting from a transferee's failure to serve the charitable purpose, the courts, generally speaking, prefer to construe transfers for exclusively charitable purposes as creating charitable trusts rather than as conditional gifts.[7] This

[3] 3 Scott, Trusts, § 373, and cases cited; Restatement, Trusts, §§ 373, 374, *comment f.*

[4] Restatement, Trusts, § 348; Abel v. Girard Trust Co. 365 Pa. 34, 73 A. (2d) 682.

[5] M. S. A. 501.12, subd. 3. Although this section does not expressly relate to municipal charitable trusts created under § 501.11(7), it has been held that the attorney general is the proper party to represent the public's interests as beneficiaries of such trusts. Schaeffer v. Newberry, 227 Minn. 259, 35 N. W. (2d) 287; In re Estate of Quinlan, 233 Minn. 35, 45 N. W. (2d) 807.

[6] 1 Scott, Trusts, § 11; Restatement, Trusts, § 11, *comments b* and *e.*

[7] 1 Scott, Trusts, § 11. See, *e. g.*, Abel v. Girard Trust Co. 365 Pa. 34, 36, 73 A. (2d) 682, 683 (devise of land "as and for a public park"); Hames v. City of Polson, 123 Mont. 469, 473, 215 P. (2d) 950, 952 (devise of land "for municipal park, * * * purposes"); City of Providence v. Payne, 47 R. I. 444, 134 A. 276.

preference is reflected in Restatement, Trusts, § 351, *comment d,* which provides:

"* * * A charitable trust is created if the transferee was restricted in the use of the property to charitable purposes."

In *comment e* of the same section, the point is emphasized by the following statement:

"* * * In the absence of other evidence a transfer of property 'upon condition' that it be applied for a charitable purpose indicates an intention to create a charitable trust rather than an intention to make a transfer upon condition * * *."

In cases arising prior to the enactment of § 501.12 of our present charitable trust statutes in 1927,[8] this court on several occasions construed devises to charitable corporations for exclusively charitable purposes as conditional gifts rather than charitable trusts.[9] However, a strong factor in these decisions was the fact that at that time, with a few specific exceptions, attempts to create charitable trusts were void.[10] None of these cases fell within the terms of the authorized exceptions. However, the court indicated that the results of these cases might well have been different if charitable trusts for the stated charitable purposes had been authorized by statute. In Longcor v. City of Red Wing, 206 Minn. 627, 633, 289 N. W. 570, 573, the court stated:

---

[8]For the history of the status of the charitable trust in Minnesota, see Thurston, *Charitable Gifts and the Minnesota Statute of Uses and Trusts,* 1 Minn. L. Rev. 201.

[9]*E. g.,* In re Estate of Little, 143 Minn. 298, 173 N. W. 659; Lane v. Eaton, 69 Minn. 141, 71 N. W. 1031; Watkins v. Bigelow, 93 Minn. 210, 100 N. W. 1104. The term "absolute gift" as used in some early Minnesota cases has reference only to the unity of legal and equitable estates, and includes gifts upon condition. Watkins v. Bigelow, *supra,* at p. 224, 100 N. W. at p. 1109.

[10]See, In re Estate of Quinlan, 233 Minn. 35, 45 N. W. (2d) 807; Longcor v. City of Red Wing, 206 Minn. 627, 289 N. W. 570; Dwan, *Minnesota's Statute of Charitable Trusts,* 14 Minn. L. Rev. 587.

"* * * Assuming a charitable trust to be legal, the fact that the transferee is restricted to a charitable purpose might often be a strong factor in inducing the conclusion that a charitable trust was intended."

With this background in mind, we have little doubt that a charitable trust was intended by Scofield's devise. Scofield's death occurred in 1926, and at that time charitable trusts to municipalities "for the benefit of * * * any public park" were specifically authorized by statute. (L. 1925, c. 133.) It is axiomatic that no particular form of words or conduct is necessary to create a trust. Neither the word "trust" nor "trustee" is required.[11] In limiting the use to which the land could be put to a charitable purpose, we think that an intent to impose an equitable duty to perform such use is shown.[12] Testator clearly expressed a desire that the property "be so used at all times that all of the people may receive use thereof daily." On the other hand, the indicia of a conditional gift of the fee interest in realty do not appear. A conditional gift of the fee interest in land may take the form of a fee simple upon condition subsequent, or a determinable fee upon special limitation. It would be contrary to all rules of construction to construe the devise in the instant case as a fee upon condition subsequent merely because of the restriction as to use.[13] Nor do we think it may be construed as a fee simple determinable upon special limitation. The traditional words of limitation do not appear, and there is no indication that a reverter in event of breach was intended. Although not essential to the validity of a determinable fee,[14] an express provision for reverter

[11]In re Estate of Quinlan, 233 Minn. 35, 45 N. W. (2d) 807; 6 Dunnell, Supp. § 9884.

[12]Restatement, Trusts, § 351, *comments d* and *e;* cases in footnote 7, *supra.*

[13]See, Fraser, *Future Interests in Property in Minnesota,* 3 Minn. L. Rev. 320, 331. See, Farnham v. Thompson, 34 Minn. 330, 26 N. W. 9.

[14]1 Simes, Law of Future Interests, § 181; 2 Powell, Real Property, § 187, and cases cited.

is a common characteristic of such conveyances, and often a determinative factor in cases requiring construction.[15]

Plaintiff argues that § 501.11(7) does not properly apply to charitable trusts such as the one in the instant case. He construes the language of the section permitting trusts "for the benefit of * * * any public park" as intended to refer only to those trusts where land is given with the provision that its *income* be used for the benefit of an *existing* public park. Trusts in which land is given to provide a situs for a public park are not contemplated, he maintains. According to plaintiff, there was no necessity for the legislature to make § 501.11(7) any broader than the above construction indicates, since § 465.03 was adequate to cover the second situation.

We cannot agree. As used in § 501.11(7), "benefit" is not a technical term. Plaintiff's construction can be sustained only if the term "benefit" is given a meaning much more restrictive than the broad and comprehensive meaning commonly given it in ordinary usage. We find no reason to deviate from the ordinary rule of construction in this case.[16] As for the lack of necessity to enact a broader section, plaintiff misconceives the relationship of the two sections. Section 465.03 merely provides a means of accepting. Unlike § 501.11(7), it does not authorize any specific kind of devise. If a charitable trust for any given purpose were not authorized by § 501.11(7), then under no circumstances could it be validly accepted under § 465.03, because at the time pertinent to this case all charitable trusts not specifically authorized were void.

Moreover, we do not think § 465.03 at all applicable to charitable trusts authorized under § 501.11(7). Under the authority of § 465.03, a village may receive any grant or devise of property made to it and may administer such property for the benefit of its citizens on terms prescribed by the donor, provided that the property is not used for sectarian or religious purposes, and that every grant or devise is

---

[15]*E. g.*, Rockford Trust Co. v. Moon, 370 Ill. 250, 18 N. E. (2d) 447; Bd. of Education v. Bd. of Education, 292 Ky. 261, 166 S. W. (2d) 295.

[16]M. S. A. 645.08(1); Kugling v. Williamson, 231 Minn. 135, 42 N. W. (2d) 534.

accepted by a resolution adopted by a two-thirds majority of the village council expressing the terms in full. Read literally, this section appears to give power to accept, with the above limitations, every type of grant or devise of property. No further authorization is necessary. Yet, § 501.11(7), in addition to permitting the creation of charitable trusts to villages for certain specified purposes, specifically authorizes villages to receive such trusts. If in fact § 465.03 is as broad as a literal reading would indicate, this express authority to receive charitable trusts is mere surplusage. However, it is a well-established rule of statutory construction that every term of a statute should be given meaning when possible.[17] For that reason, we construe § 501.11(7) as permitting acceptance other than as prescribed in § 465.03.

That a difference was intended is completely reasonable upon consideration of the policies of the respective sections. An extremely broad power of acceptance is conferred by § 465.03. Except for the prohibition against serving religious or sectarian purposes, there is no express limitation on the types of grants which may be accepted. Many grants or devises which would fall within the terms of the authorized grants might well contain terms so burdensome to the village as to outweigh the advantages of the grant. It seems clear that the provision for acceptance by a two-thirds majority contained in § 465.03 is to prevent hasty acceptance of such grants by requiring the assent of a strong majority of the village council as a condition precedent to acceptance.

These considerations do not apply with equal force to charitable trusts created under § 501.11(7). Only a limited and carefully selected list of charitable trusts is authorized to be created and received under that section. The select nature of these trusts is demonstrated not only by examining the nature of the authorized purposes, but also by the fact that of all the kinds of charitable trusts conceivable only these few were authorized. It seems only reasonable to suppose that the legislature intended to encourage

---

[17]Gale v. Commr. of Taxation, 228 Minn. 345, 37 N. W. (2d) 711, and cases cited; Cohen v. Gould, 177 Minn. 398, 225 N. W. 435.

the creation and receipt of these kinds of charitable trusts.

Since nothing in § 501.11(7) specifies the procedure by which a village as trustee must accept a charitable trust created thereunder, the common-law rules concerning acceptance of trusts by trustees apply. Acceptance of a trust need not be express, but may be inferred from conduct of the trustee.[18] In the instant case, the village council applied for cancellation of unpaid taxes, fenced the land, and maintained a deer park at its own expense. This conduct constitutes evidence from which the court could find that a valid acceptance of the trust had been made by the village. Since the court was amply justified in finding a valid acceptance, it follows that the heirs of Edward J. Scofield had no interest which they could convey by their quitclaim deeds, and plaintiff's claim to title must fail. Accordingly, the judgment of the trial court must be affirmed.

Affirmed.

---

[18]Cooper v. Cooper, 3 Cal. App. (2d) 154, 39 P. (2d) 820; 1A Bogert, Trusts and Trustees, § 150.