**Mayor Randy KELLY, Relator,**

v.

**CAMPAIGN FINANCE AND PUBLIC DISCLOSURE BOARD,**
Respondent.

No. A03–970.

Court of Appeals of Minnesota.

May 11, 2004.

Manuel J. Cervantes, St. Paul City Attorney, Gerald T. Hendrickson, Deputy City Attorney, John H. Stechmann, Assistant City Attorney, St. Paul, MN, for relator.

Mike Hatch, Attorney General, Gregory P. Huwe, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by
SHUMAKER, Presiding Judge;
KALITOWSKI, Judge; and MINGE,
Judge.

## OPINION

KALITOWSKI, Judge.

A complaint filed with respondent alleged that relator City of St. Paul Mayor Randy Kelly accepted a gift from a lobbyist principal, in violation of Minn.Stat. § 10A.071 (2002). Following a hearing, respondent found that there was probable cause to believe that relator had violated section 10A.071. Relator challenges respondent's decision, arguing that he did not violate section 10A.071 because the gift was to the city, it was used for the benefit of the city, and the city council approved

the gift pursuant to Minn.Stat. § 465.03 (2002).

## FACTS

On April 21, 2003, Jac Sperling and Bob Naegele, two of the owners of the Minnesota Wild hockey team, spoke with Deputy Mayor Dennis Flaherty to invite relator Mayor Kelly to travel with them to game seven of the National Hockey League western conference quarter-final playoff game between the Minnesota Wild and the Colorado Avalanche to be played in Denver the following night. Deputy Mayor Flaherty called Mayor Kelly that night and Mayor Kelly agreed to attend. The next night, Mayor Kelly flew to Denver with Dr. Glen Nelson, an investor in Minnesota Hockey Ventures Group LP, Rose Wild LLC, and Gopher State Ethanol, all of which are lobbyist principals. Sperling, Naegele, and two other Minnesota Wild officials also flew to Denver with Dr. Nelson and Mayor Kelly. Mayor Kelly watched the game from a private suite at the Pepsi Center. After the game, the group immediately returned to Minnesota, arriving at approximately 4:00 a.m. on April 23.

Shortly after returning from the trip, Mayor Kelly proposed a resolution to the St. Paul City Council accepting the gift of air travel and attendance at the game on behalf of the city. On May 7, 2003, the city council considered the resolution at a public meeting and passed it by a two-thirds majority as required under Minn. Stat. § 465.03, finding that "the participation by official City representatives in these events serves the public purpose of supporting and showing commitment to a major asset of Saint Paul, encouraging further development and commitment in Saint Paul, and further enhancing Saint Paul as a place to live, work, and visit."

On May 28, 2003, two individuals filed a complaint with respondent Campaign Finance and Public Disclosure Board alleging that Mayor Kelly violated Minn.Stat. § 10A.071 (2002), which prohibits a lobbyist principal from giving a gift to a public official and prohibits a public official from accepting a gift from a lobbyist principal. On June 25, 2003, respondent held a hearing and found that there was probable cause to believe that Mayor Kelly had violated section 10A.071. Respondent's order required Mayor Kelly to reimburse the Wild for all costs of the trip. Mayor Kelly filed a writ of certiorari to this court.

## ISSUE

■ Did relator violate Minn.Stat. § 10A.071 by accepting a gift from a lobbyist principal on behalf of the city?

## ANALYSIS

■ The construction and application of a statute are questions of law, which this court reviews de novo. *Benigni v. County of St. Louis,* 585 N.W.2d 51, 54 (Minn. 1998).

Minn.Stat. § 10A.071 (2002) prohibits a public official from accepting a gift from a lobbyist. But Mayor Kelly argues that he did not violate Minn.Stat. § 10A.071 because the trip was a gift to the city, accepted by the city council, and used for a public purpose as provided for in Minn.Stat. § 465.03 (2002):

Any city … may accept a grant or devise of real or personal property and maintain such property for the benefit of its citizens in accordance with the terms prescribed by the donor.... Every such acceptance shall be by resolution of the governing body adopted by a two-thirds majority of its members, expressing such terms in full.

In making this argument, Mayor Kelly relies on Minn.Stat. § 465.03 as it was implicitly applied in a 1996 decision of the Ethical Practices Board (EPB): *In re Investigation of Belton,* No. 398–96 (Minn. Ethical Practices Bd. Jan. 26, 1996). In that case, the EPB determined that Northwest Airline's provision of airfare to Japan, which was accepted as a gift by the City of Minneapolis and used by Mayor Sharon Sayles Belton, was used by the city for a legitimate public purpose and did not constitute a gift to an official. *Id.* In addition, the EPB did not find a violation where Honeywell Corp., a lobbyist principal, provided $500 to the city to support the costs of Mayor Belton's trip, and the city accepted the funds as a gift and deposited the money in the mayor's contingency fund to be used at the mayor's discretion. *Id.*

Here, in its written decision, respondent made no specific reference to Minn.Stat. § 465.03 or to its earlier decision in *Belton.* In its oral argument to this court, respondent conceded that the gift to Mayor Kelly served a legitimate public purpose that benefited the City of St. Paul and that the only relevant distinction between the facts underlying *Belton* and the facts here is that in *Belton,* the city council accepted the gifts before the mayor used them while here, the city council did not accept the gift until after the mayor had returned from the trip.

Mayor Kelly argues that he complied with Minn.Stat. § 465.03. And the record supports his contentions that: (1) there was not enough time to present the gift to the city council for prior acceptance or to obtain a prior ruling from respondent; (2) Mayor Kelly accepted the gift on the city's behalf, pending approval from the city council; (3) Mayor Kelly submitted the matter to the city council shortly after returning from Denver; and (4) it was in the best interest of the city for him to accept the gift. And, notwithstanding respondent's argument, we note that Minn.

Stat. § 465.03 is silent on the issue of whether a city council may accept a gift on behalf of the city after a city official has already conditionally accepted the gift. Moreover, section 465.03 confers on cities an extremely broad power of acceptance. *Schaeffer v. Newberry*, 235 Minn. 282, 290, 50 N.W.2d 477, 482 (1951). The Minnesota Supreme Court has even upheld a gift to a city where there is no evidence that the city ever accepted the gift in accordance with section 465.03. *Hous. & Redevelopment Auth. of S. St. Paul v. United Stockyards Corp.*, 309 Minn. 331, 333, 244 N.W.2d 275, 276 (1976).

■ Mayor Kelly contends that because the City of St. Paul complied with Minn. Stat. § 465.03 and followed *Belton* as much as practicable, respondent's decision was fundamentally unfair and violated his right to due process because, in effect, respondent changed its policy without prior notice. We agree. The goal of the Due Process Clause is to prevent the arbitrary and standardless enforcement of laws. *State v. Davidson*, 481 N.W.2d 51, 56 (Minn.1992). And despite the fact that the facts here closely parallel the facts presented to respondent in issuing *Belton*, respondent failed to address *Belton* or Minn.Stat. § 465.03 in its order.

Moreover, although not specifically referenced in its written decision, the record indicates that respondent relied on an advisory opinion that addresses nearly identical facts as presented here and concludes that use of the gift prior to acceptance by the city constitutes a violation of Minn. Stat. § 10A.071. Op. Campaign Fin. & Pub. Disclosure Bd. 348 (May 28, 2003) (Advisory Opinion 348). But importantly, that opinion was issued *after* Mayor Kelly returned from the trip and *after* the gift was accepted by the St. Paul City Council. Thus, it was ineffective to put Mayor Kelly on notice of a policy change. In addition,

Minn.Stat. § 10A.02, subd. 12a (2002), does not allow respondent to apply advisory opinions more broadly than to the individual to whom the opinion was issued unless the opinion is adopted as a rule.

Contrary to respondent's claims, the record indicates that it improperly relied on Advisory Opinion 348 in reaching its decision. The advisory opinion states that "[t]he facts provided for this opinion are insufficient for the Board to conclude whether the use of the plane would be a prohibited gift under Chapter 10A." And during the Board's hearing, a board member, in a discussion surrounding whether a lobbyist principal was involved in providing use of the plane to Mayor Kelly, stated that "[t]hat's information we didn't have in the advisory opinion. . . ." Thus, the record indicates that notwithstanding Minn.Stat. § 10A.02, subd. 12a, respondent issued the advisory opinion with this specific case in mind and relied on it in reaching its decision.

We recognize that in the future respondent has the authority, through appropriate decisions or rulemaking, to interpret Minn.Stat. § 10A.071 and determine how the ban on gifts interacts with Minn.Stat. § 465.03. And we recognize that prior use of a gift, as occurred here, may raise the appearance of impropriety. But we conclude that on this record it was fundamentally unfair for respondent to depart from the reasoning in *Belton* and apply a new interpretation after-the-fact to Mayor Kelly's actions. Because the City of St. Paul complied with Minn.Stat. § 465.03 and because the facts here are similar to the facts of *Belton*, we conclude that respondent's determination that Mayor Kelly violated Minn.Stat. § 10A.071 was arbitrary and in violation of Mayor Kelly's right to due process.

## DECISION

The requirements of Minn.Stat. § 465.03 were met when the St. Paul City Council found a public purpose, accepted the gift on the city's behalf, and appropriated the use of the gift to Mayor Kelly. Mayor Kelly generally complied with respondent's decision in *Belton* because neither prior approval of the gift by the city council nor a prior ruling by respondent was possible. Therefore, we conclude that Mayor Kelly did not violate Minn.Stat. § 10A.071 (2002) by conditionally accepting and using the gift on the city's behalf.

**Reversed.**

MINGE, Judge (concurring specially).

I join in the opinion of the court and add this separate concurrence. The parties to this appeal did not litigate whether the travel and other consumable items were property as that term is used in Minn.Stat. § 465.03 (2002) and the opinion does not reach that question.